No. 805.

### THE CINCINNATI, INDIANAPOLIS, ST. LOUIS AND CHICAGO RAILWAY COMPANY v. GRAMES.

RAILROAD.—*Contributory Negligence.—Special Verdict.—When Plaintiff is Free from Negligence.—Railroad Crossing.—Personal Injury.*—A. and B., as shown by special verdict, approached a railroad crossing with a wagon and team of horses; under the following circumstances and manner: A. driving and B. sitting in seat with A. On both sides of the street forming the crossing were buildings, which obstructed the view of persons approaching the railroad and materially interfered with their hearing approaching trains; also, box cars projecting into the street from each side, on a switch eight feet from main track, between main track and A. and B., obstructed the view of approaching trains. A. and B., who had made the crossing but a short time before, from the east, were returning. When about

Cincinnati, Indianapolis, St. Louis and Chicago Ry. Co. *v.* Grames.

fifty feet from the tracks, they stopped their team and looked and listened for approaching trains, and could see and hear none. Then they started to make the crossing, driving in a walk, one listening and looking south for approaching trains and the other listening and looking north for the same. In such manner they approached the crossing, neither seeing nor hearing any, nor any signal of an approaching train, and could not have seen or heard the approach of the train, the company failing to give the statutory signals. While the horses were upon the main track, a train coming from the south and running at the rate of thirty miles an hour, ran against and upon the team and the wagon, injuring B., etc.

*Held,* that the facts found by the special verdict are sufficient to warrant the court in inferring that B. exercised care commensurate with the danger encountered, and was not guilty of contributory negligence.

SAME.—*Railroad Crossing.—Care Required of Traveler in Crossing.*—It is incumbent upon a traveler on a highway, riding in a wagon and about to cross a railroad track, who can not see or hear an approaching train on account of obstructions which are known to him, to use greater precaution to protect himself from injury than where the view is unobstructed, and the opportunity for using the senses of sight and hearing is unimpaired. Care commensurate with the known danger is required.

SAME.—*Presumptions.—Lawful Conduct.—Statutory Signals.—Railroad Employes.—Traveler.*—While a traveler on a highway may presume that the employes of a railroad company will obey the law and give the required warning, so, also, those in charge of the train may assume that the traveler will take every precaution commensurate with the danger which he is about to encounter.

SAME.—*Presumption of Contributory Negligence.—Recovery.*—Where a traveler is injured at a railroad crossing, the law raises the presumption that the fault was his own, and he must rebut this presumption before he can recover.

SPECIAL VERDICT.—*Province of Jury, of Court.—Conclusion of Law.*—Where a special verdict is requested, it is the province of the jury to find only the ultimate facts established by the evidence, leaving the conclusions of law thereon to be stated by the court.

JUDICIAL NOTICE.—*Judges.—Terms of Office.*—The Appellate Court judicially knows who the judges of the courts of general jurisdiction of the State are, and when their terms of office expire.

BILL OF EXCEPTIONS.—*Who May Sign.—Expiration of Judge's Term of Office.*—A person who was judge and presided at the trial of a cause, has no power to sign a bill of exceptions and make the same a part

of the record in such cause, after he has ceased to be judge. Such function should be performed by his successor.

WAIVER.—*Motion for Judgment.*—*Motion for New Trial Pending Above Motion.*—*Right to Exception not Waived.*—Where a motion of plaintiff for judgment is pending, the defendant does not waive the right to call in question the action of the court in rendering judgment for plaintiff, by filing a motion for a new trial while the motion for judgment was pending.

From the Boone Circuit Court.

*J. T. Dye, A. Baker, E. Daniels, B. K. Elliott* and *W. F. Elliott,* for appellant.

*A. C. Harris, P. H. Dutch* and *J. G. Adams,* for appellee.

Ross, J.—The appellee brought this action to recover damages for personal injuries sustained by being struck by one of appellant's trains, at a point in Thorntown where Main street intersects appellant's railroad.

The cause was tried by a jury, and at the request of the appellee they returned a special verdict, upon which the court, after overruling a motion made by appellant for a new trial, rendered judgment for the appellee.

To the ruling on the motion for a new trial, and in rendering judgment on the verdict in favor of appellee, the appellant at the time excepted, and these are the only errors assigned in this court.

Several questions of practice, touching the regularity of the record, have been urged by counsel for appellee, in their brief, which it is necessary to consider before taking up for consideration the errors assigned by appellant.

The record discloses, that the issues were formed, trial had, motion for a new trial made and overruled, judgment rendered for the appellee, and time granted appellant to file bill of exceptions, by and before the Honorable T. J. Terhune, sole judge of the twentieth judicial circuit; that within the time allowed by the court the

appellant presented to the Honorable J. A. Abbott, then sole judge of said judicial circuit, his bill of exceptions, which was duly signed by him and filed as a part of the record in this cause.

This court judicially knows who the judges of the courts of general jurisdiction of the State are, and when their terms of office expire, hence it knows that Judge Abbott was the successor of Judge Terhune.

A person who has been judge and presided as such at the trial of a cause has no power to sign a bill of exceptions and make the same a part of the record in such cause, after he has ceased to be judge. *Smith* v. *Baugh*, 32 Ind. 163; *Ketcham, Admx.,* v. *Hill*, 42 Ind. 64; *Toledo, etc., R. W. Co.* v. *Rogers*, 48 Ind. 427; *Reed* v. *Worland, Exr.*, 64 Ind. 216.

There is nothing in the contention of appellee's counsel that appellant has waived the right to call in question the action of the court in rendering judgment on the verdict in favor of appellee by filing a motion for a new trial, while the motion of appellee for a judgment was pending, and without waiting for the ruling thereon.

The sustaining of the motion of the appellee for a judgment on the verdict did not bar the right of the appellant to apply for a new trial, and by the filing of the motion for a new trial it did not waive its right to an exception to the ruling of the court in sustaining and rendering judgment in favor of the appellee, on his motion therefor. The filing of the motion for a new trial, by appellant, was not equivalent to a concession that unless a new trial was granted the appellee was entitled to a judgment on the verdict.

The special verdict returned by the jury is very voluminous, and, besides repeating the same facts, has embodied in it both legal conclusions and part of the evidence.

The material facts found, so far as we are able to determine them, are as follows:    That on and previous to the 31st day of August, 1887, the appellant was a railroad corporation owning and operating a line of railroad running from north to south through the town of Thorntown, in Boone county, Indiana, intersecting Main street in said town, which street was one of the principal thoroughfares thereof and in frequent use, and that said town contained a population of about seventeen hundred persons; that Main street was one hundred feet wide, and run east and west, and intersected appellant's railroad almost at right angles; that at such intersection appellant's railroad consisted of a main track and a side track, the side track, which was about eight feet distant from the main track and on the west side thereof, extended both north and south of Main street; that on said day there were several box cars standing on the side track, two of which, one on each side of Main street, extended out into the street, the one on the south side projecting into the street up to a plank crossing sixteen feet wide, which was placed about the center of the street; that on both sides of the street, from within a few feet of appellant's railroad and west thereof, were buildings which obstructed the view of persons approaching the railroad from the west, and very materially interfered with their hearing trains approaching from either direction; that on said day the appellee, who was nearly fourteen years of age, in good health and of ordinary intelligence, and possessed of "perfect eyesight and hearing," in company with his brother, who was twenty-two years of age, came into Thorntown from the east at ten o'clock in the forenoon, "with a load of wheat on a farm wagon drawn by two horses," driving westward along Main street, crossed over appellant's railroad tracks, and saw the situation and surrounding of the crossing and the position of the

box cars, which were then standing on the switch in said street; that in a short time they started to return along Main street, and to recross appellant's tracks, and that when about fifty feet distant from the tracks they stopped their team and looked and listened for approaching trains, and could not see and did not hear the approach of any; that they stopped for one minute, and while so stopping with said team and just before and at the time of starting their team toward the railroad crossing, fifty feet distant from where they then were, Richard Grames, the brother, who was and had been driving the team, spoke to the appellee directing him to keep a watch to the north side and listen for the locomotives, engines, and cars, while he looked and listened for the locomotives, engines, and cars on the south side; that while the appellee and his brother were sitting on the seat in the wagon with the horses standing still at said point, and before starting the team of horses, he and his brother looked and listened for the approach to said crossing of any locomotive, engine and cars upon appellant's railroad track; that neither the appellee nor his brother heard or saw any locomotive, engine, or cars approaching said crossing, or signal given, or noise of an approaching train, and did not see any signal of warning given by any flagman at the crossing or any warning given by any one that a locomotive, engine, or cars were approaching the crossing; that immediately after so looking and listening they drove said team of horses and wagon easterly on said Main street to said railroad track at said crossing; that in approaching the railroad crossing from the place of stopping to look and listen appellee's brother drove said team in a walk, and at no time between said point of stopping and said crossing did he drive faster than a walk; that continuously from the time of starting, fifty feet west of the said crossing, the

appellee and his brother looked and listened for the approach of any locomotive, engine, or train of cars to said crossing on said railroad track, up to the time the horses drawing said wagon had passed upon appellant's main track at said crossing; that neither appellee nor his brother saw or heard the approaching locomotives, engine, or train of cars approaching said crossing; that neither appellee nor his brother, in so approaching said crossing, could have seen or heard the approach of appellant's locomotive, engine, or cars, by the exercise of their senses of sight or hearing; that as they were driving said team across appellant's tracks, and while the horses were upon the main track, a train coming from the south, and running at the rate of thirty miles per hour, ran against and upon said team of horses and the wagon in which appellee and his brother were sitting, injuring appellee, etc.; that if the box car which projected into the street had not been standing on said side track at said crossing the appellee and his brother could have seen and heard appellant's locomotive, engine and cars approaching the crossing, before driving their team of horses upon either the side or main track at said crossing, and in time to have stopped their team before driving upon the main track.

It is further found that no whistle was blown or bell rung on said engine before or while approaching said crossing, neither was there any signal of any kind given of the approach of said engine and cars to said crossing, and that if appellant's servants had caused the whistle to be blown or the bell to be rung, appellee and his brother could have heard it in time to have avoided the injury. It is also found that other streets in said town cross said railroad.

As already stated, the verdict contains many repetitions of the same facts intermingled, with which are ex-

tracts from the evidence, as well as many conclusions of law, and for that reason it has been a matter of much difficulty to give a clear statement of the facts. That part of the finding, after the jury find that no bell was rung or whistle blown on appellant's engine, where they find that if the bell had been rung or the whistle blown, the appellee *would have heard them and would have avoided the injury complained of,* are conclusions. The law presumes that when a person is apprised of danger, he will not voluntarily throw himself in its way.

In determining the legal effect of the facts found, we can consider only the ultimate facts, disregarding evidentiary facts as well as conclusions of law embraced in the special verdict. "A special verdict is that by which the jury find the facts only, leaving judgment thereon to the court." Section 545, R. S. 1881.

Ultimate facts only are to be found and set out in a special verdict, and not evidentiary facts, evidence, mixed questions of law and fact or legal conclusions. *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Cook* v. *McNaughton,* 128 Ind. 410; *Perkins* v. *Hayward,* 124 Ind. 445.

"A special verdict is where the jury find the facts of the case, leaving the ultimate decision of the cause, *upon those facts,* to the court, concluding conditionally that if, upon the whole matter thus found, the court should be of opinion that the plaintiff had a cause of action, they then find for the plaintiff, and assess his damages; if otherwise, then for the defendant." 3 Black Proof and Pleading Accident Cas. 378; Boote Suits at Law, 158.

"It is of the very essence of a special verdict that the jury should find the facts on which the court is to pronounce judgment according to law." 1 East, 111; Lord Raymond, 1581.

Cincinnati, Indianapolis, St. Louis and Chicago Ry. Co. v. Grames.

In *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151, the court says: "The purpose of a special verdict is to avoid the mistakes that the jury may make in the application of the law to the facts. When a special verdict is demanded, the jury are to find the facts, and the court declares the law upon those facts."

It is settled, therefore, that when the jury are to return a special verdict, they shall find and set out in their verdict the facts, omitting therefrom legal inferences and evidentiary facts. It devolves upon the court very often to instruct the jury what are facts and whether it is necessary to embody in a special verdict the facts relative to a certain question, and this leads us to determine whether or not certain questions, among which are the questions of negligence and contributory negligence, are facts to be found and set out in such a verdict.

It was right and proper for the jury in this case to find and set out in their verdict whether or not the bell was wrung or the whistle blown, on appellant's engine, and whether or not, if the bell had been rung and the whistle blown, appellee could have heard them; but they had no right to conclude that he would have heard them, and having heard them, would have avoided the injury. It was for the jury to determine, from the evidence, not only what the appellant's servants did, or failed to do, in the operation of its train, but also to find what the appellee did and what he failed to do before going upon the railroad track; but it was wholly beyond their province to say what the appellee would have done under different circumstances. The question at issue was not what he might or would have done under different circumstances, but what did he do under the circumstances in this case?

When a traveler on a highway is injured at its intersection with a railroad, by being struck by a train, the

fault is *prima facie* his own. *Indiana, etc., R. W. Co.* v. *Hammock*, 113 Ind. 1.

And the law assumes that he actually saw what he could have seen, had he looked and heard what he could have heard had he listened. *Cones, Admr.,* v. *Cincinnati, etc., R. W. Co.*, 114 Ind. 328.

And a special verdict which shows a person to have been injured at such a point, in order to hold the railroad company answerable therefor, must show facts that will warrant the court in concluding, as a matter of law, not only that the injury was inflicted by reason of the negligence of the railroad company, but that the injured person was free from fault contributing thereto.

Some confusion apparently exists in the decisions of the courts of last resort in this State, as to when it is proper for a jury to determine the questions of negligence and contributory negligence. It is settled, however, that the question of negligence is either purely a question of law or a question of mingled law and fact, and that it is never a question purely of fact.

In the case of *Toledo, etc., R. W. Co.* v. *Goddard*, 25 Ind. 185, the Supreme Court says: "The court, at the request of the plaintiff, submitted to the jury the following special interrogatories, to which they returned the answers annexed:

" 'Was not the defendant guilty of negligence in placing the freight car on the side-track, on the street, thereby obstructing the same?' To which the jury answered: 'Yes.'

" 'Was not the defendant guilty of negligence in not placing some visible signal at or near the southwest corner of the woodshed, to indicate the approach of the backing train, to prevent collision?' To which the jury answered: 'Yes.' "

These interrogatories, we think, should not have been

submitted to the jury. The answers to them do not con-
stitute a special verdict under the statute. They were
probably intended to be submitted under the last clause
of section 336 of the code, 2 G. & H. 205, which pro-
vides that the court, "in all cases, when requested by
either party, shall instruct the jury, if they render a
general verdict, to find specially upon particular ques-
tions of fact, to be stated in writing, which special find-
ing is to be recorded with the verdict." These inter-
rogatories do not conform to the statute. They do not
ask the jury to find upon any particular questions of
fact; they simply assume that certain facts existed, and
ask the jury if they do not constitute negligence.

The question of negligence is ordinarily a mixed one
of law and fact, but when the facts are found, then their
legal consequences constitute purely a question of law for
the court, and not for the jury. If the jury had been
asked to find specially whether the defendant had placed
a freight car on the side-track, on the street, thereby ob-
structing the same, and whether the company had placed
a visible signal at or near the southwest corner of the
woodshed, to indicate the approach of the backing train,
to prevent collision, and the jury had answered the first
in the affirmative, and the second in the negative, these
would have been facts specially found by the jury, and
then it would have devolved upon the court to determine,
as a question of law, whether the facts so found by the
jury constituted such negligence as to make the defend-
ant liable for the injury complained of.

In *Bellefontaine R. W. Co. v. Hunter, Admr.*, 33 Ind.
335, it was said: "But while negligence is, in general,
a mixed issue of law and fact, yet it is equally true that
when the fact which it is claimed constitutes negligence is
found, its legal character and consequences become a
matter of law."

In *Pittsburgh, etc., R. R. Co.* v. *Spencer, supra,* Judge ELLIOTT says: "Conclusions of law in a special verdict are without force, and a general statement that an act was negligently done is but a conclusion of law. The facts showing how the act was done are essential, for without them the court can not ascertain or pronounce the law. All the authorities agree that the law is exclusively for the court in cases where special verdicts are returned, but if it be held that a general statement of negligence is good, then nothing at all is left to the court, for the jury have determined both the law and the facts. To allow this would be to permit the jury to usurp the functions of the court and decide the whole case. In that event the court would be without power and without functions, and this surely can not be the law. If the jury's decision, stated in general terms, that an act is negligent, is sufficient, then what need for a court? All that would be necessary, if that were the law, would be to take a special verdict embodying the jury's opinion. Something is to be done by the court in every case of a special verdict, and that something is to declare the law upon the facts found; but if we hold that the jury's general statement that an act was negligent is sufficient, we affirm the converse of this, because, by so holding, we declare that the verdict of the jury settles everything, the law as well as the facts, leaving the court nothing to do except make the mere formal entry of judgment.

"We understand it to be a fixed principle that the court does rule upon all questions of negligence. If it were otherwise, there would be no element of law in such a case; everything would be pure matter of fact, nothing would be matter of law. It would be strange indeed if in any case a judgment could be had without the application of rules of law, and in all civil cases the law comes

from the court.   It has been said, scores and scores of times that negligence is generally a mixed question of law and fact, and it has also been often said that where the facts are undisputed, and the inferences to be drawn from them unequivocal, it may be a question of law. If it be true, as undeniably it is, that the question is always either one of law, or one of mixed law and fact, then it must be true that in all cases the court must pronounce the law.   In the case of a special verdict, it is only possible to do this by action upon the facts stated in the verdict.

''Where a general verdict is sought, the court instructs the jury as to the law of negligence, and thus pronounces the law of the case; but in cases where a special verdict is asked, the law is pronounced, not in instructions to the jury, but upon the facts stated by the jury.   If the jury for themselves state the law, then the court is a mere passive spectator, at most a mere moderator.   In general verdicts, the law enters as a factor; because the jury are required to decide the case 'according to the law and the evidence;' but in special verdicts, they simply state the facts.   It is clear that unless all the material facts are stated in the special verdict, the court can not declare the law, and the result is that the law is not declared at all, or is declared by the jury.

''We have said that when the facts are found the legal character and consequences are matters of law for the court, and we now give our authority for this statement. In a recent work it is said:   ''And though negligence is generally a mixed question of law and of fact, yet when the fact from the existence of which it is claimed that the negligence flows, is found by the jury to be true, then its legal character and the consequences flowing therefrom become a matter of law for the court.'   2 Rorer Railroads, 1030.''

In *Purcell* v. *English*, 86 Ind. 34, ELLIOTT, Judge, says: "When the cause of action declared on is negligence, the court may direct a verdict for the defendant, in cases where the evidence wholly fails to make out a *prima facie* case. It is true that the question of negligence is generally one of mingled law and fact, but there are cases where the question is purely one of law."

In *Indianapolis, etc., R. W. Co.* v. *Watson*, 114 Ind. 20, ELLIOTT, J., says: "The question of negligence is never one exclusively of fact. The jury find the facts, but if from the facts one inference only can be drawn, and that is that there was negligence, it must be so adjudged as matter of law; or, conversely, if it can be clearly affirmed as matter of law that there was no negligence, the court must so declare. In no case where negligence is the issue does the court entirely abdicate its power, for as to the law it must always rule, although, in some instances, the jury ultimately decide whether there is, or is not, negligence; but in every case the court must declare the law."

In *Brannen* v. *Kokomo, etc., Gravel Road Co.*, 115 Ind. 115, the court says: "In the case before us the facts were found by the jury, and hence, as to whether appellant, upon those facts, was, or was not, negligent, is a question of law for the court."

In *Chicago, etc., R.R.Co.* v. *Ostrander*, 116 Ind. 259, 264, it was said: "It has practically become a legal maxim in this State that negligence is a mixed question of law and fact, and is a question of law where the facts are undisputed, and the inferences to be drawn from them unequivocal. But no question of negligence as a legal proposition arises until the facts from which negligence is supposed to have resulted are in some manner established."

In *Baltimore, etc., R. R. Co.* v. *Walborn, Admr.*, 127

Ind. 142, COFFEY, J., says: "Ordinarily, negligence is a mixed question of law and fact, but it has often been held by this and other courts, that, generally, where the facts are undisputed, the question of negligence becomes one of law."

In the case of *Korrady, Admx.,* v. *Lake Shore, etc., R. W. Co.*, 131 Ind. 261, the court says: "The appellant complains of a ruling of the trial court declining to permit an interrogatory to go to the jury. That interrogatory reads thus: 'Is it not a fact that Korrady was not negligent in crossing Wide alley where he did if he did not know said engine was approaching at a speed of more than ten miles an hour?' The complaint is not well founded. The appellant had a right to elicit the facts, but had no right to ask for a general conclusion, intermixing matters of fact with matters of law."

This leads us to inquire: When is the question of negligence one of law and fact to be determined by the jury, and when purely a question of law to be decided by the court?

Whether or not the question of contributory negligence, on the part of the plaintiff, or of negligence on the part of the defendant in a given case, is one to be determined by the court as a question of law, or by the jury, under the instruction of the court, as a question of mixed law and fact, is always an important and often a very difficult question to determine.

As Elliott, J., in *Perkins* v. *Hayward, supra,* says: "One of the most perplexing questions in the wide range of the law is whether a statement embodies a mere conclusion or contains a recital of an ultimate fact. The line between conclusions and ultimate facts is so shadowy and indistinct that it is often almost impossible to discover and follow it."

"Negligence, like ownership, is a complex conception.

Just as the latter imports the existence of certain facts, and also the consequence (protection against all the world) which the law attaches to those facts, the former imports the existence of certain facts (conduct), and also the consequences (liability) which the law attaches to those facts." Holmes' Common Law 115. And, again, on page 120, he says: "When a judge rules that there is no evidence of negligence, he does something more than is embraced in an ordinary ruling that there is no evidence of a fact. He rules that the acts or omissions proved or in question do not constitute a ground of legal liability, and in this way the law is gradually enriching itself from daily life, as it should."

"The question of legal liability is therefore one of negligence, and its consideration demands, first, a determination of what negligence is. To reach this we are not to look solely at a man's acts or his failure to act: the term is relative, and its application depends on the situation of the parties, and the degree of care and vigilance which the circumstances reasonably impose. That degree is not the same in all cases: it may vary according to the danger involved in the want of vigilance." Cooley on Torts, 751.

"Negligence is the omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." Alderson B., in *Blyth* v. *Birmingham Water Works Co.*, 11 Exch. H. & G. 781.

Judge Wharton, in his work on negligence, section 3, says: "Negligence, in its civil relations, is such an inadvertent imperfection, by a responsible human agent, in the discharge of a legal duty, as produces, in an ordinary and natural sequence, a damage to another."

And Buswell, in his Law of Personal Injuries, section

91, says: "Negligence, whether on the part of the plaintiff or of the defendant, may be defined as the want of ordinary or reasonable care in respect of that which it is the duty of the party to do or to leave undone."

The word negligence, however, in its use by text writers, as well as courts, does not always stand for or include all the elements embraced in what is considered this "complex conception," and we must not consider that when it is said either in the text books or the opinions of the court, that the question of negligence is a question of mixed law and fact, or in others where it is said to be a question of law, that it is intended as announcing a legal principle applicable alike in all cases, but the sense in which the word negligence is used in the particular case may be ascertained and determined from the particular facts and circumstances with which used, and we may thus avoid apparent confusion of thought.

"But another, and perhaps the chief cause of the difficulty of determining in a given case whether the conclusion as to negligence is one of law or of fact, arises from another source, which we will now consider. The conception of negligence, as we have seen, involves the idea of a duty to act in a certain way towards others, and a violation of that duty by acts or conduct of a contrary nature. The duty is imposed by law, either directly by establishing specific or general rules of conduct binding upon all persons, or indirectly through legal agreements made by the parties concerned. It is with duties not arising out of contract that we are here concerned. There is further involved in the legal conception of negligence, the existence of a test or standard of conduct with which the given conduct is to be compared, and by which it is to be judged. The question whether the given conduct comes up to the standard is frequently

called the 'question of negligence.' The result of com-
paring the conduct with the standard is generally spoken
of as 'negligence' or the 'finding of negligence.' Negli-
gence, in this last sense, is always a conclusion or in-
ference, and never a fact in the ordinary sense of that
word.'' *Farrell* v. *Waterburg Horse R. R. Co.*, 60 Conn.
239.

Where the law directs the precise conduct required
under given circumstances, the standard by which such
conduct is judged is found in the law. For instance, in
many cases decided in this, as well as other States, the
rule of law has been declared that a person's conduct
shall be measured by what an ordinarily prudent man
should have done under like circumstances. This gen-
eral rule, however, has been prolific of many misappli-
cations, arising not so much from a misunderstanding
as to the degree of care to be exercised, as from the fail-
ure to know who defines the measure of the duty and deter-
mines whether or not the acts of the party meet the legal
obligation imposed, the jury or the court.

In many well considered cases it has been held that
while the law prescribes the degree of care and deter-
mines whether or not the facts proven are sufficient in
law to satisfy the requirements of the law, it is always
for the jury to determine, from the evidence, what facts
have been proven. In fact by most of the courts of last
resort in this country, as well as in England, it has been
decided, and most rigidly adhered to, that it is for the
court to say to the jury what facts, if proven, constitute
negligence, and it is then for the jury to say whether or
not such facts have been proven. And this rule seems
to be the correct and proper rule, for were it otherwise,
either that the court should have the right to draw the
inferences of fact or the jury to determine the measure

of duty, the greatest aim of justice, namely that the rule of duty by which one's conduct shall be measured as declared by the law on the one hand, and the right to have the acts of omission or commission determined by one's peers, would be entirely eradicated, and if left entirely to the jury they would not only determine the facts, but they would declare the measure of duty, or recognize or eradicate the duty, as they should see fit, while if the court were to be permitted to determine the facts proven, it would authorize the court to set up its judgment as against that of twelve others equally sensible and competent to determine what facts have been proven by the evidence.

The Supreme Court of Illinois, however, has decided that an instruction to the jury that certain facts, if proven, constitute negligence, is erroneous. *Pennsylvania Co.* v. *Frana*, 112 Ill. 398; *Myers, Admx.*, v. *Indianapolis, etc., R. W. Co.*, 113 Ill. 386.

If the inference of negligence is one to be drawn by the jury, it is their province to draw it free from limitation or restriction imposed by the court, and their determination of the question is final and not subject to review, either by the court before whom the cause is tried, or the Appellate Court, on appeal, because their opinion of what a man of ordinary prudence would or would not do under the circumstances, is the rule of decision in that case. They would then conclude not only what an ordinarily prudent man should and would do under the circumstances, but they would determine whether the person in the particular case did or omitted to do what they have concluded is the measure of duty for an ordinarily prudent person under the circumstances. Relieved of all consideration of what he actually did and omitted, they would simply be required to determine whether or not he was an ordinarily prudent man. Such

a perversion of the rules of law which define the duties of all persons, whether ordinarily prudent or otherwise, can not be sanctioned.

"The main object is to ascertain the facts. When they are ascertained, the question of negligence is for the court." *Doggett* v. *Richmond, etc., R. R. Co.*, 78 N. C. 305.

And the first requisite in establishing negligence is to show the existence of the duty which it is supposed has not been performed. If negligence can not be imputed, except a duty has been violated, and we assume that without the violation of a duty, either by omission or commission, negligence can not exist, then the law alone defines the duty, and it is not for the jury to say whether or not a duty exists.

Hackney, J., in *Louisville, etc., R. W. Co.* v. *Schmidt*, 134 Ind. 16, says: "Our embarrassment has been in determining how far the finding of the jury, by the general verdict, was an adjudication of negligence as a question of fact, and as to the privilege of the court to determine whether the facts were such that negligence, as a question of law might be inferred therefrom. It is often a difficult question, to determine the line dividing the privilege of the jury from the power of the court in determining what facts constitute actionable negligence."

Bishop, in his work on Non-Contract Law, section 444, after referring to the different rules of law as established by the different courts, says: "In spite of the rule that the question of negligence is for the jury, the other rule which requires the judge to pass upon the admission of evidence, and its effect, and the sufficiency of the allegations, renders it necessarily a matter of law whether or not in a given case a particular act or omission is negligence."

In this State a party bringing an action to recover

damages occasioned by the negligence of another may be required to allege specifically the acts or omissions upon which negligence is predicated. *Pennsylvania Co.* v. *Dean, by Next Friend,* 92 Ind. 459.

And when the facts are pleaded, the court determines whether or not they constitute actionable negligence. *Weis* v. *City of Madison,* 75 Ind. 241; *Louisville, etc., R. W. Co.* v. *Schmidt,* 106 Ind. 73, and cases cited.

And from the same facts found by a jury in a special verdict, the court must of necessity draw the inference of negligence or want of negligence. If the court must determine, as a question of law, whether or not the facts pleaded constitute negligence, it is also the duty of the court to determine, where those same facts are found in a special verdict, whether or not negligence shall be inferred. Were it otherwise, the court, in passing upon a pleading, would determine that a given state of facts constituted negligence, and, on the trial of the cause, the jury from the same facts might conclude that the inference of negligence did not arise.

In *Faris* v. *Hoberg,* 134 Ind. 269, Hackney, J., says: "Numerous authorities are cited, by the appellant, to the proposition that in a case involving questions of negligence, the court is not at liberty to take such questions from the jury, but must leave them to the jury for decision. These cases all belong to that class where a question of fact is controverted, and that question is one necessary to plaintiff's recovery, or essential to the defendant's proper defense. None of them hold that the jury are the exclusve judges of the existence or nonexistence of negligence as an ultimate fact. A moment's reflection will show the error of a rule which would deprive the court of the right to determine whether a given state of facts, uncontroverted, does or does not constitute actionable negligence. When the facts are submitted to the court upon

demurrer to a complaint, the court exercises the power of determining whether such facts, if proven, will constitute actionable negligence. When, under the practice prevailing, the jury does not return a general verdict, but returns findings of fact by special verdict, the court must determine whether the facts so found are sufficient to warrant the conclusion of the existence of negligence."

If any apparent inconsistency exists in the law as announced in this State, it is not that it is improperly stated, but rather because principles are announced as general which have but a limited application.

In a number of recent cases, in which general verdicts were returned, the following general legal proposition has been announced, viz.: That in cases where negligence is the issue, and the facts are undisputed, and but one inference can be drawn therefrom, the court may draw that inference; *but where the facts are controverted, or where more than one inference may be reasonably drawn from the facts, the question is generally one for the jury, under proper instructions from the court. Rogers v. Leyden,* 127 Ind. 50; *Baltimore, etc., R. R. Co. v. Walborn, Admr., supra; City of Franklin v. Harter,* 127 Ind. 446; *Shoner v. Pennsylvania Co.,* 130 Ind. 170; *Eichel v. Senhenn,* 2 Ind. App. 208.

ELLIOTT, Judge, in *City of Franklin v. Harter, supra,* uses this forcible language: "As the question in cases where a municipal corporation is sought to be held liable for injuries caused by a defect in a street is one of negligence, it is seldom that the court can determine the question as one of law, for in by far the greater number of cases the question is a complex one, in which matters of law blend with matters of fact. In all such cases the duty of the court is to instruct the jury as to the law, and that of the jury is to determine whether, under the law as declared by the court, there is actually negligence.

Nor does this general rule fail in all cases where the facts are undisputed, since the rule has long been settled in this State that where an inference of negligence may or may not be reasonably drawn from admitted facts, the case is ordinarily for the jury, under proper instructions, but where only one inference can be reasonably drawn from the facts the question of negligence or no negligence may be determined by the court, as one of pure law. The rule, as we have outlined it, is the law of this State and must be so accepted, notwithstanding expressions occasionally found in some of the cases which seem to indicate a different doctrine. It would overthrow a long line of cases to deny the rule, and it would also lead to the subversion of sound and salutary principles. In the old, as well as in the recent cases, the doctrine we here declare has been strongly and explicitly asserted, and to that doctrine we give an unwavering and unhesitating adherence, disapproving all statements which seem to deny its soundness.''

The principle declared in these cases is applicable in the cases in which announced, which were cases where general verdicts were returned, and the same principle of law applies in all cases of that nature; but it has no application in cases where special verdicts are returned by the jury.

When a special verdict is required, no instructions are given to the jury as to the law of the case. *Louisville, etc., R. W. Co.* v. *Buck, Admr.*, 116 Ind. 566, and cases cited.

And this is so for the reason that when the facts have been found, the court will apply the law to such facts in determining the rights of the parties. The statute provides for special verdicts for the express purpose of taking from the jury the duty of applying the law to the facts. This is to avoid a misapplication of the law to the

facts, and to prevent, as far as possible, any purpose on the part of the jury, either through sympathy or prejudice, from bending the facts to the law in order that a favored litigant may succeed. We think the correct principle, applicable alike in cases where either a general or a special verdict is returned by the jury, is announced by OLDS, Judge, in the case of *Rush* v. *Coal Bluff Mining Co.*, 131 Ind. 135, where he says: "It is the province of the jury to weigh evidence where there is evidence from which two conclusions may reasonably be drawn, but it is the province of the court to determine whether or not there is or is not evidence supporting any particular fact or theory of a case, and if there is no evidence authorizing a reasonable inference of such fact or theory essential to a recovery or sufficient to create a reasonable difference of opinion in the minds of impartial men sitting in judgment on the case, then it is the duty of the court to instruct the jury to return a verdict against the party having the burden of establishing such material facts essential to a recovery. If, however, the evidence is such as that impartial men may differ as to the conclusions to be drawn from the evidence, then the court must submit the question to the jury. Such we believe to be the well-established rule of the law. Jurors can not, without evidence reasonably authorizing an inference of negligence, arbitrarily declare there was negligence. Neither can they, in the face of undisputed facts showing conclusively that a party was guilty of negligence contributing to an injury, declare that he was free from contributory negligence."

In cases where the jury are to return a general verdict, it is settled that if the facts are undisputed, or where but one inference of fact can be drawn from the evidence, the court may instruct the jury, as a matter of law, whether or not such facts constitute negligence, but

if the evidence is conflicting, or the inferences of fact to be drawn from the evidence are such that two minds, equally sensible and impartial, may differ as to the inferences of fact to be drawn from the evidence, the question of negligence should be left to the jury under proper instructions from the court. In such cases it devolves upon the court to say, as matter of law, what amounts to negligence or contributory negligence, and upon the jury to say as matter of fact, in the light of the instructions of the court, whether or not the evidentiary facts proven establish the ultimate facts which the court has instructed constitute negligence or contributory negligence. In many cases has this question been decided, so that it seems settled beyond all question. Beach on Contributory Negligence, section 161; *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Woolery, Admr.*, v. *Louisville, etc., R. W. Co.*, 107 Ind. 381; *Evans* v. *Adams Express Co.*, 122 Ind. 362; *Board, etc.*, v. *Chipps, Admr.*, 131 Ind. 56; *Eichel* v. *Senhenn, supra.*

When a jury is to return a special verdict, they should find and return facts only. They have no right to embody in a special verdict, either the evidence, legal conclusions, opinions or mixed questions of law and fact. And when they have found the facts they have no right to conclude whether or not the defendant was guilty of negligence or the plaintiff guilty of contributory negligence. Were it otherwise, the jury would be the exclusive judges of what constitutes negligence, and the court could only render judgment upon the verdict, for the party in whose favor the jury have concluded. If they have a right in a special verdict to draw the conclusion of negligence or want of negligence, that inference must be a fact, to be found and embodied in the verdict, while the facts upon which the inference is based would be

merely evidentiary facts, and should not be embodied in the verdict. But, as we have decided, negligence is never a question purely of fact, it can not be found as a fact in a special verdict.

Whether a party has been negligent under certain circumstances includes two questions, namely: 1st. Whether a particular thing has been done or omitted; this is a pure question of fact. And, 2d. Whether the doing or the failure to do this thing was a legal duty; this is a pure question of law. *Metropolitan R. W. Co.* v. *Jackson*, L. R. 3 App. C. 193.

As the court said in *Pittsburgh, etc., R. R. Co.* v. *Spencer, supra:* "Conclusions of law in a special verdict are without force, and a general statement that an act was negligently done is but a conclusion of law. The facts showing how the act was done are essential, for without them the court can not ascertain or pronounce the law."

In *Indianapolis, etc.; R. W. Co.* v. *Bush, supra,* which was an action to recover damages for personal injury received by being struck by a train at a highway crossing, the jury returned a special verdict, and on appeal ZOLLARS, Chief Justice, speaking for the court, says: "At the close of the verdict are conclusions by the jury that appellee was not guilty of contributory negligence, and that the injury was the result of carelessness and negligence on the part of appellant. These conclusions are conclusions of *law* that the jury could not make, and hence must be disregarded in deciding as to the sufficiency of the verdict."

In *Western Union Telegraph Co.* v. *McDaniel*, 103 Ind. 294, ELLIOTT, J., says: "We put our decision upon the ground laid down by the Supreme Court of Pennsylvania in a case not unlike the present. It was said by that court: 'The cases are numerous that upon an un-

disputed state of facts it is the province of the court to pass upon the question of defendant's negligence.' *Koons* v. *Western Union Telegraph Co.*, 102 Pa. St. 164. The rule stated in the case cited is the rule of this court. *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186. These cases, it is true, speak of the negligence of the defendant, but negligence is negligence whether on the part of the plaintiff or of the defendant, and the rule as to how it is to be determined and by whom, is the same in the one case as in the other.''

In the case of *Conner* v. *Citizens' Street R. W. Co.*, 105 Ind. 62, the jury returned a special verdict, and after setting out the facts proven, concludes as follows: ''12th.   That the conduct of plaintiff on the occasion of the injury was ordinarily prudent and cautious under the circumstances, and that he did not wholly contribute to said injury by any fault or negligence on his part, but that said injury was caused mostly by the agent of the defendant driver of said car.''

Judge Mitchell, in passing upon the sufficiency of the facts found, says:   ''In determining the legal value and quality of the facts found, the paragraph above set out is not to be regarded as a finding of facts.   It contains nothing more than inferences or conclusions, drawn by the jury upon the precedent facts, and upon these it was not the province of the jury, in their special verdict, either to express opinions or draw conclusions.   In framing and returning a special verdict, the whole duty of the jury is discharged when they have found and set forth, in an orderly and intelligent manner, all the principal facts which were proven within the issues submitted to them.   *    *    *    *    *    *    *    *

''When, upon an issue involving negligence, the principal or ultimate facts are determined by the jury, it then becomes the function of the court to decide, as a ques-

MAY TERM, 1893. 139

Cincinnati, Indianapolis, St. Louis and Chicago Ry. Co. v. Grames.

tion of law upon the facts found, whether or not the party to whom negligence is imputed was negligent.

"A civil case can not be conceived of in which it is the province of the jury by special verdict to determine the facts, and also to draw inferences in the nature of legal conclusions upon the facts found. When the jury find and return a special verdict, it must then be considered that the facts in that case are no longer in dispute. They are ascertained and settled by the special verdict. Unless it can be maintained that the inference or conclusion which may be drawn from all the ascertained and undisputed facts is also a fact, it must follow that it is not the province of the jury to draw inferences or state conclusions. It is settled by decisions so numerous that we need not cite the cases, that where the facts are undisputed it is the province of the court to settle the question of negligence as a question of law. This must be so in the nature of things. If it is otherwise, there is a class of cases in which, upon the undisputed facts, the court is incapable of reaching a conclusion, or of determining whether such facts constitute negligence or not. As in cases where the question is whether, upon an ascertained state of facts, the conclusion of fraud, conversion of goods, payment or probable cause for the institution of a suit may be drawn. So, where the question is whether negligence has intervened when the facts are ascertained by the instrumentality selected for that purpose, the court must determine whether, in law, negligence can be predicated upon the facts ascertained.

"Concede that in some sense negligence is, as it is sometimes said to be, a mixed question of law and fact, it can not be so after the facts are ascertained. In cases involving negligence, as in all other civil cases, a point must be reached at some time when the facts and the law are to be considered as separate and distinct, when the

litigants have the right to invoke the judgment of the court, and require it to determine whether, upon the facts as they are agreed to be, the law declares that negligence intervened. Such a point, we think, is arrived at when the jury have agreed upon and returned to the court in a special verdict the principal, contested facts in issue."

In *Louisville, etc., R. W. Co.* v. *Balch*, 105 Ind. 93, it was said: "A special verdict is a finding of the facts only. In this, the jury have nothing to do with the law. The court does not instruct them as to the law, but in the rendition of the judgment, applies the law to the facts found by the jury."

In *Woolery, Admr.*, v. *Louisville, etc., R. W. Co.*, supra, MITCHELL, Judge, again says: "It was the exclusive province of the jury to ascertain the facts, and apply them, when ascertained, to the law, and return their general verdict accordingly. In doing this, however, they were to be guided by proper instructions from the court as to the law of the case. In that connection it was the duty of the court to instruct the jury what facts within the issues in the case, if established by the proof, would or might, under the circumstances, constitute contributory negligence, leaving to the jury the duty of discovering whether such facts and circumstances were proved or not. Simply to have told the jury that the plaintiff must have been free from contributory negligence, without stating what facts might constitute contributory negligence, would have been to leave the jury without any direction whatever in respect to the legal effect of the facts in the case. The practical result of the doctrine contended for would be to submit both the law and the facts to the determination of the jury.

"It can not be maintained that a civil case can arise in which the court is incompetent to declare the law upon

the facts, when the facts are either admitted or satisfactorily proved.    Where the essential facts are ascertained in any case, the litigants have a right to call upon the court to declare the law.    *Wanamaker* v. *Burke*, 111 Pa. St. 423.

"If the court can do nothing more than deal in abstract generalities in its charge, then in every case involving negligence the jury are left at sea, a law unto themselves.    It is the duty of the court, in every case in which a general verdict is to be returned, to instruct the jury as to the force and legal effect of the facts which may have been proved within the issues."

In *Perkins* v. *Hayward, supra,* ELLIOTT, Judge, says: "It is well settled that a special verdict must find the facts and state neither conclusions of law nor mere matters of evidence, and, as we have seen, what is true of a special verdict is true of a special finding."

In *Chicago, etc., R. W. Co.* v. *Burger*, 124 Ind. 275, COFFEY, J., says:   "A finding that one of the parties has been guilty of negligence has often been held by this court to be a mere statement of a conclusion."

When the facts are found or undisputed, it is for the court to determine, as a question of law, whether or not they constitute negligence.    *Louisville, etc., R. R. Co.* v. *Eves*, 1 Ind. App. 224;   *Toledo, etc., R. W. Co.* v. *Goddard, supra; Pittsburgh, etc., R. R. Co.* v. *Spencer, supra; Louisville, etc., R. W. Co.* v. *Balch, supra; Woolery, Admr.,* v. *Louisville, etc., R. W. Co., supra.*

The principle, and oftentimes the only, questions of law, in an action brought to recover damages for personal injuries, are the questions of negligence on the part of the defendant, and of contributory negligence on the part of the plaintiff, and if they were to be left to the determination of the jury, there would be nothing for the court to do.   Where the jury is to return a special

verdict, the court should not instruct them as to what does or does not constitute negligence or contributory negligence, because they have no right to apply the law to the facts to determine whether or not negligence exists; neither have they a right to know that if they find a given state of facts, the court, in applying the law, will infer negligence. *Toler* v. *Keiher*, 81 Ind. 383; *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18; *Louisville, etc., R. W. Co.* v. *Hart*, 119 Ind. 273; *Stayner* v. *Joyce*, 120 Ind. 99; *Sprinkle* v. *Taylor*, 1 Ind. App. 74.

It is simply their province to find the ultimate facts, not knowing what legal inference the court may draw therefrom when the law is applied. From ultimate facts, but one legal conclusion can be drawn. In the trial of a cause, the evidentiary facts may all be admitted, from which more than one inference of an ultimate fact may be drawn, in which case it is always the province of the jury to draw the inference of the existence of the ultimate fact, and when the ultimate facts are found, the court concludes the law. The questions of negligence and contributory negligence are not ultimate facts, but are legal conclusions drawn from the ultimate facts. *Louisville, etc., R. R. Co.* v. *Eves, supra; Hankey* v. *Downey*, 3 Ind. App. 325; *Indianapolis, etc., R. W. Co.* v. *Bush, supra; Pennsylvania Co.* v. *Marion*, 104 Ind. 239; *Conner* v. *Citizens' Street R. W. Co., supra; Woolery, Admr.*, v. *Louisville, etc., R. W. Co., supra; Chicago, etc., R. R. Co.* v. *Ostrander, supra.*

In approaching the crossing, as found by the jury, without blowing the whistle or ringing the bell on the engine, as required by the statute, the appellant was guilty of negligence, and if the appellee was injured by reason thereof, and without fault on his part contributing thereto, he would be entitled to recover. *Baltimore, etc., R. R. Co.* v. *Walborn, Admr., supra.*

But the failure of the railroad company to do what the statute directs does not excuse one who approaches a railroad crossing from exercising the care and taking the precaution which the law enjoins upon him. *Mann* v. *Belt R. R., etc., Co.,* 128 Ind. 138; *Cadwallader* v. *Louisville, etc., R. W. Co.,* 128 Ind. 518; *Thornton* v. *Cleveland, etc., R. W. Co.,* 131 Ind. 492, 31 N. E. Rep. 185.

The only question left to be determined is whether or not the appellee was guilty of contributory negligence. Do the facts found show a failure to perform a duty imposed by law? The burden rests upon the appellee to show affirmatively that he has performed every duty imposed upon him by law, before the court can say that he did not contribute to his injury. *Hathaway* v. *Toledo, etc., R. W. Co.,* 46 Ind. 25; *Toledo, etc., R. R. Co.* v. *Brannagan, Admx.,* 75 Ind. 490; *Lyons* v. *Terre Haute, etc., R. R. Co.,* 101 Ind. 419; *Indiana, etc., R. W. Co.* v. *Greene, Admx.,* 106 Ind. 279; *Belt R. R., etc., Co.* v. *Mann,* 107 Ind. 89; *Chicago, etc., R. W. Co.* v. *Hedges, Admx.,* 118 Ind. 5; *Cincinnati, etc., R. W. Co.* v. *Howard,* 124 Ind. 280, and cases cited; *Miller, Admr.,* v. *Louisville, etc., R. W. Co.,* 128 Ind. 97.

For, as Mitchell, C. J., in the case of *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31, says: "In such an occurrence, he is one of the independent actors, charged with duties correlative with the duties of the railroad company. He is able and he must show whether his duty was performed. Thousands of persons pass safely over a given crossing over which thousands of trains are run, under every variety of circumstances, before one is injured, and, therefore, it may be said a presumption arises that the crossing may be safely passed by all those who observe such care as prudent persons ordinarily observe. Out of the thousands who crossed, the one who sustained injury is the exception. Because the thous-

ands who crossed in safety are supposed to represent the ordinary course of conduct better than the one, a presumption of fact is indulged that he, too, would have passed in safety had he observed the caution which prudent men ordinarily observe under like circumstances. This presumption is at least sufficient to require from him an explanation of his relation to the occurrence, and an affirmative showing that the circumstances were such, and his conduct such, that he was not in fault, and as his own conduct and his relation to the occurrence are peculiarly known to himself, and may be unknown to the railroad company, the requirement is a reasonable one.''

It is incumbent upon a traveler on a highway, riding in a wagon and about to cross a railroad track, who can not see or hear an approaching train on account of obstructions which are known to him, to use greater precaution to protect himself from injury than where the view is unobstructed, and the opportunity for using the senses of sight and hearing is unimpaired. The greater the danger, the greater the precaution required of him. He must not only do what an ordinarily prudent man would do under like circumstances, but he must exercise such care and diligence as are commensurate with the danger which confronts him. *Toledo, etc., R. W. Co.* v. *Shuckman, Admr.*, 50 Ind. 42; *Nave* v. *Flack*, 90 Ind. 205; *Board, etc.*, v. *Dombke*, 94 Ind. 72; *City of Indianapolis* v. *Cook*, 99 Ind. 10; *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Town of Gosport* v. *Evans*, 112 Ind. 133; *Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 326.

And a person going along a highway who drives upon a railroad track at a place known to him to be peculiarly dangerous because of the obstructions which impair and hinder the free use of his senses of sight and hearing, simply relying upon the servants of the railroad com-

pany performing their duty in blowing the whistle and ringing the bell, does not show himself, in the eyes of the law, to have been diligent and prudent. For, as the distinguished Judge SHARSWOOD, in *Pennsylvania R. R. Co.* v. *Beale*, 73 Pa. St. 504, says: "If the traveler can not see the track by looking out, whether from fog or other cause, he should get out, and if necessary lead his horse and wagon. A prudent and careful man would always do this at such a place. * * There never was a more important principle settled than that the fact of the failure to stop immediately before crossing a railroad track, is not merely evidence of negligence for the jury, but negligence *per se*, and a question for the court."

In the case of *Seefeld* v. *Chicago, etc., R. W. Co.*, 70 Wis. 216, the court, after reviewing many cases cited, says: "The rule to be deduced from these cases is this: If the view of a traveler on the highway approaching a railroad crossing is so obstructed that he can not see an approaching train in time to stop his team before colliding with it, if he knows that a train is due at such crossing at or about such time, and if he is unable to hear the approaching train when his team is in motion, whether by reason of the force and direction of the wind or of noises in the vicinity, made by his own wagon, or other causes, ordinary care requires him to stop his team while he may do so and listen for the train."

In *Brady* v. *Toledo, etc., R. R. Co.*, 81 Mich. 616, it appeared, that the plaintiff was driving a team attached to a lumber wagon, on a highway, toward the defendant's railroad; that intervening objects obscured a view of the track so that he could not see a train approaching, until within twenty or twenty-five feet of the crossing, and then only when the train was but a short distance from the crossing. He was familiar with the crossing,

and in addition to the view being obscured, a mill in the vicinity made considerable noise. He drove his team upon the crossing without stopping just before going upon the track, to look and listen, and was injured, and the court held that it was not sufficient that plaintiff looked and listened for the train as he drove along, but he should have stopped his team and listened; and the court, concluding its opinion, says: "A greater duty was imposed upon the plaintiff in the present case by the fact that he knew the crossing to be a dangerous one. He knew its condition and that he would be unable to see the train until arriving at the crossing. He had no right to close his ears and drive along without stopping when he must have known that the noise of his wagon and of the mill would shut off the sound from the approaching train."

In the case of *Haas, Admr.*, v. *Grand Rapids, etc., R. R. Co.*, 47 Mich. 401, the facts were that the deceased, while driving along a highway approaching where it crossed the appellee's railroad, and when about three rods from the crossing he stopped his team and looked and listened and then proceeded on his way to the crossing, where he was struck and killed by a passing train. Judge Cooley, speaking for the court in passing upon the facts, says: "The peculiar risks of the crossing imposed upon the decedent the duty of special caution also; and as he knew that a regular train was due at the crossing at about that time, he was under the highest possible obligation to observe such precaution as would be needful to avoid a collision. We may concede that the railroad company failed to sound the bell; but this did not relieve the decedent from the duty of taking ordinary precautions for his own safety. And what ordinary prudence would demand must be determined on a view of all the circumstances. It is vain to urge or to pre-

tend that ordinary precautions were made use of in this case. To move forward briskly as the decedent did, from a point whence an approaching train would not be seen, at a time when it was known by him that a train was due, and not to pause until the train was encountered, was so far from being ordinary prudence that it approached more nearly to absolute recklessness." See, also, *Pennsylvania R. R. Co.* v. *Righter,* 42 N. J. L. 180; *Wilds* v. *Hudson, etc., R. R. Co.,* 29 N. Y. 315; *Gorton* v. *Erie R. W. Co.,* 45 N. Y. 660; *Pennsylvania Canal Co.* v. *Bentley,* 66 Pa. St. 30; *Henze* v. *St. Louis, etc., R. W. Co.,* 71 Mo. 636; *Turner* v. *Hannibal, etc., R. R. Co.,* 74 Mo. 602; *Marty* v. *Chicago, etc., R. W. Co.,* 38 Minn. 108, and *Fletcher* v. *Fitchburg R. R. Co.,* 149 Mass. 127.

While a traveler on a highway may presume that the employes of a railroad company will obey the law and give the required warning, yet those in charge of the train may assume that the traveler will take every precaution commensurate with the danger which he is about to encounter, and will avoid going upon the track in front of the train.

The court, in *Hathaway* v. *Toledo, etc., R. W. Co., supra,* says: "Although the negligence of the defendant was a cause, and even the primary cause of the occurrence, yet the occurrence would not have happened without a certain degree of blamable negligence on the part of the plaintiff."

A railroad crossing is a place of danger, and one who does not exercise every sense or faculty to protect himself from possible injury, before attempting to cross, can not be said to have exercised due care. Self-preservation is the first and greatest law of nature, and ordinarily it will lead to the employment of all the precautions which the situation naturally suggests to an individual in danger of harm. It implies not only the doing of

those things which an ordinarily prudent man would do under like circumstances, but the doing of every practicable and available thing within his power, which the law says he should do.  And it is no excuse that he did all that an ordinarily prudent man would have done under like circumstances, unless the things done were all the law declares an ordinarily prudent man should have done. It is the law that measures the duty, for a prudent man may do that which the law forbids, or he may omit to do that which the law enjoins, nevertheless the doing of the one or the omission of the other is negligence. The most prudent men are not always exempt from carelessness, and when actually negligent the law attaches the same consequences to their conduct as to similar conduct in others. *Bellefontaine R. W. Co.* v. *Hunter, Admr.*, *supra; Pennsylvania Co.* v. *Marion, supra.*

In this case the appellee and his brother, when fifty feet distant from the track, stopped, looked, and listened, and from that point the horses approached and went upon the railroad track in a walk, the appellee looking and listening for approaching trains.  That when and where they stopped they could neither hear nor see an approaching train on account of obstructions.  It is also found that the appellee saw the situation and surroundings of the crossing.  And while the appellant was guilty of negligence in placing the cars in the street, it was appellee's duty to approach the crossing under the apprehension that a train was liable to come at any moment; and while he had a right to presume that those in charge of the engine would obey the law by giving warning of its approach, the law nevertheless required that he obey the instincts of self-preservation, and not thrust himself into a situation of danger, knowing that he could not see or hear a train approaching, except those in charge of the train gave the statutory signals.

When a crossing is so dangerous that for one to attempt to cross is equivalent almost to courting injury, he can not recover if, knowing the danger, he assumes the responsibility and attempts to cross and gets injured.

"Where there is danger, and the peril is known whoever encounters it voluntarily and unnecessarily can not be regarded as exercising ordinary prudence, and therefore does so at his own risk." Ray's Negligence of Imposed Duties, p. 129.

In *Town of Gosport* v. *Evans, supra,* the court says: "One who knows of a dangerous obstruction in a street or sidewalk, and yet attempts to pass it when, on account of darkness or other hindering causes, he can not see so as to avoid it, takes the risk upon himself. For a much greater reason does he take the risk upon himself, if, seeing an obstruction, and knowing its dangerous character, he deliberately goes into or upon it, when he was under no compulsion to go, or might have avoided it by going around."

As heretofore stated, the fact that he was injured raises the presumption that the fault was his own, and it was for him to rebut that presumption. The facts found show that this was a street in a populous part of the town, and that where it crossed appellant's railroad the obstructions were such that to cross it one took great risk. Whether or not he was justified in taking the risk must depend upon the circumstances. He can not shut his eyes to dangers which are apparent, and, if injured, recover therefor.

"A person is bound to use the senses, and exercise the reasoning faculties with which nature has endowed him. If he fails to do so, and is injured in consequence, neither he, in life, nor his representatives after his death, can recover for resulting injuries." *Stewart, Admx.,* v. *Pennsylvania Co.,* 130 Ind. 242.

In *Shoner* v. *Pennsylvania Co., supra,* McBride, J., says: "When a traveler approaches a railroad with the intention of crossing it, he is bound to know that to attempt to cross near and in front of a moving train involves more or less of danger. If he is so heedless of his personal safety that he braves the danger, or so careless that he does not use the senses nature has given him to look and listen, that he may learn if there is danger, only one inference, that of negligence, can be drawn from his conduct."

The facts do not show that at any point nearer than fifty feet from appellant's track the appellee stopped and looked and listened.

In the case of *Thornton* v. *Cleveland, etc., R. W. Co., supra,* the court says: "While the plaintiff was not required to enter into a calculation of the comparative speed of a traveler walking towards a railroad track, and a train of cars passing along that track at ordinary speed, he must, as a matter of common observation, have known that while he would walk one hundred and fifty-five feet, the train would cover a considerable distance, sufficient, at least, to require him to look for its approach at some point during his journey. He had no right to look from a given point, and then close his eyes and pass upon the track."

It is a matter of common knowledge, hence is judicially known, that a train of cars moving along a railroad track necessarily makes a noise. That noise of itself is a warning to those about to go upon the track to look out and guard against danger. It is, therefore, the duty of one, before going upon the track, to listen for the sound which necessarily follows a moving train, and if there are any obstructions which interfere with his hearing readily, he must stop and listen. *Louisville, etc., R. W. Co.* v. *Stommel,* 126 Ind. 35.

And it is not always sufficient that he do so when one hundred or fifty feet away from the track, but he must do so at the last opportunity before going upon the track, when by so doing he could have heard.

In the case of *Louisville, etc., R. W. Co.* v. *Stommel, supra,* the court says: "We are at a loss to understand what difference it could make as to the caution to be used by the appellee's servant, whether there was or was not a statute requiring the giving of signals. It was his duty to stop and look for an approaching train, if there was any point within a reasonable distance from the crossing from which he could observe a train approaching; and if no train was to be seen it was his duty, when nearing the crossing, to stop and listen for the sound which ordinarily follows a moving train; and a statute requiring signals to be given, though violated, does not excuse this vigilance."

And COFFEY, J., in *Mann* v. *Belt R. R., etc., Co., supra* (144), says: "When it is said that a person approaching a railroad crossing must look and listen attentively for approaching trains, it is not to be understood that he may look from a given point, and then close his eyes; but it is to be understood that he must exercise such care as a reasonably prudent person, in the presence of such a danger, would exercise to avoid injury. The courts can not close their eyes to matters of general notoriety, and to matters of every-day observation. We must know that a train of cars passing over iron or steel rails at a speed of thirty miles an hour does not do so without noise. * * * As a rule, it is not necessary to stop and listen or look where approaching danger can be otherwise ascertained, but one approaching such crossing must exercise such care as will enable him, under the circumstances, to inform himself

Cincinnati, Indianapolis, St. Louis and Chicago Ry. Co. *v.* Grames.

of the extent of the danger attending the crossing of the track if he can reasonably do so.''

A majority of the court (the writer of this opinion not included) are of the opinion that the facts found by the jury, disregarding conclusions as well as evidentiary facts set out in the verdict, are sufficient to warrant the court in inferring that the appellee exercised care commensurate with the danger encountered, and, therefore, was not guilty of contributory negligence, and that the appellee was entitled to judgment thereon.

Appellant insists that the court below erred in permitting a witness, called by appellee, to testify concerning a conversation had with one Wheatley concerning the removal of the appellant's cars which were standing in Main street.

We are unable to see wherein this evidence, even if material, could have been prejudicial to the appellant. The appellant had no right to block the street with its cars, and it required no notice to remove them to make it guilty of negligence in having them there.

We find no error in the record, for which the judgment should be reversed.

Judgment affirmed.

Filed June 21, 1893.

PER CURIAM.—The majority of the court concurred in the result reached in the original opinion in affirming the judgment of the trial court, but not in all the reasoning therein contained. The cause having since been compromised, the parties, by agreement, ask leave to withdraw the petition for a rehearing heretofore filed.

With these observations such leave is accordingly granted.

Filed May 9, 1894.