The Pennsylvania Company v. Marion.

Filed Dec. 17, 1885.

---

No. 12,110.

## THE PENNSYLVANIA COMPANY v. MARION.

NEGLIGENCE.—*Sufficiency of Complaint Charging.*—In common law actions based on the negligence of the defendant, it must appear from the complaint, either by direct averment or from the statement of such facts as to a certainty raise the presumption, that the injury was the result of the defendant's negligence.

SAME.—*Negligence Depends on Facts of Case.*—Whether a party was negligent in a particular case depends on the facts in that case, without regard to whether the conduct of the party was that of an ordinarily prudent man. For instructions on this subject see opinion.

RAILROAD.—*Negligence.*—*Stepping from Moving Train.*—*Defective Depot Platform.*—A complaint against a railroad company by a passenger who was injured in stepping from a slowly moving train upon the platform of a regular station, alleging that the platform "had been suffered to get out of repair and wholly unsuitable for the reception of passengers," and that it had settled down in the center, forming an incline which caused the plaintiff to slip and fall under the train, of which defect the plaintiff had no knowledge, is not sufficient.

SAME.—*Degree of Care as to Platforms and Approaches.*—With respect to its platforms and approaches, a railroad company is only held to that reasonable degree of care which is demanded of individuals upon whose premises others come by invitation or inducement for the transaction of business.

SAME.—*Evidence as to Condition of Platform After Injury.*—Evidence as to the condition of the platform some time after the injury is not admissible, unless it be shown that its condition is substantially the same as at the time of the injury.

EVIDENCE.—*Proof of Value of Gratuitous Services in Action for Injury.*—Although the attendants on one suffering from an injury render their services gratuitously, he may, in an action for damages, prove the value of such services.

| | |
|---|---|
| 104 | 239 |
| 127 | 9 |
| 104 | 239 |
| 138 | 108 |
| 104 | 239 |
| 161 | 86 |
| 161 | 214 |
| 104 | 239 |
| 165 | 299 |
| 104 | 239 |
| 169 | 23 |
| 170 | 209 |
| 170 | 545 |
| 104 | 239 |
| f171 | 74 |
| f171 | 167 |
| f171 | 313 |

PRACTICE.—*Impeachment of Witness.*—*Corroboration.*—It is for the jury to determine whether the evidence in corroboration of a witness should outweigh the impeaching evidence.

SUPREME COURT.—*Pleading.*—*Consideration of Ruling on Demurrer.*—*Evidence.*—Where a demurrer is filed to a complaint and overruled, the ruling must be considered upon its own merits, without regard to the evidence.

From the Owen Circuit Court.

*S. O. Pickens*, for appellant.

*J. C. Robinson* and *I. H. Fowler*, for appellee.

MITCHELL, J.—The complaint in this case avers that, on the 6th day of December, 1882, the plaintiff took passage on one of the defendant's trains at Gosport, in Owen county, to be carried thence to Mundy's Station, a regular passenger station on the defendant's line; that about a half mile from the station, which was reached about 11 o'clock A. M., the train on which he was proceeding slacked up so that when it reached the station it was moving at a very slow rate of speed, so that the plaintiff could have alighted therefrom with safety if there had been a suitable platform or other suitable place prepared for passengers to step upon when leaving the train; that there was a passenger depot and a platform for passengers to get on and off trains at Mundy's Station, but that the platform had been suffered to get out of repair and wholly unsuitable for the reception of passengers; that it had settled down, or become depressed in the middle so as to form an inclined plane from the car to the center of the platform. It is averred that while the train was running at a very slow rate of speed, and without any fault or negligence on his part, the plaintiff stepped upon the platform without any knowledge of its defective condition, when, owing to the inclination in the platform, his feet flew from under under him, and he was thrown under the train, from which he suffered injury resulting in the necessity of having his right arm amputated.

The question is presented whether the facts thus stated

constitute a cause of action. It is nowhere averred in the complaint, in terms, that the defendant was guilty of any negligence, or that anything was done or omitted negligently or carelessly. The plaintiff relies upon the facts stated to raise the inference or presumption of negligence without direct averment, and in this it may be said he has adopted, to say the least, an extremely hazardous method of pleading.

In all common law actions, the basis of which is the negligence of the defendant, negligence or its equivalent must be directly averred, or such facts must be stated as that a presumption of negligence arises.

It must appear from the complaint, either by direct averment or from the statement of such facts as to a certainty raise the presumption, that the injury was the result of the defendant's negligence, or that it was purposely committed. *Baltimore, etc., R. W. Co.* v. *Anderson,* 58 Ind. 413, and cases cited; *Indianapolis, etc., R. R. Co.* v. *Brucey,* 21 Ind. 215; *Terre Haute, etc., R. R. Co.* v. *Smith,* 19 Ind. 42; *Dyer* v. *Pacific Railroad,* 34 Mo. 127; Thompson Neg., p. 1246.

Do the facts averred raise a presumption of negligence? The plaintiff, having voluntarily left his seat and alighted upon the platform while the train was in motion, is not in a position to claim the benefit of the well established rule which raises a presumption of negligence in favor of a passenger who, while conforming to the regulations of the carrier, or while passively seated in a car, sustains an injury in consequence of the car being thrown from the track, or other mishap to the train. It is only in cases where the deliberate volition and voluntary action of the passenger are not involved that such presumption arises. Speaking of this rule, it has been said: " It does not apply where the occasion of the hurt of the passenger was an active voluntary movement on his part, combined with some alleged deficiency in the carrier's means of transportation or accommodation; and the reason is that in such cases it is necessary to consider

whether there may not have been contributory negligence on the part of a passenger. It is only in respect of those accidents which happen to the passenger while he passively trusts himself to the safety of the carrier's means of transportation, or to the skill, diligence, and care of servants, that the rule applies." Thompson Car., p. 214. 2 Wood Railway Law, p. 1100.

Adopting the foregoing statement, we will consider briefly the supposed inculpatory statements contained in the complaint. The only matter of grievance charged is that the defendant suffered its platform at Mundy's Station to become out of repair; that it was so depressed in the center as to incline from that point toward the cars. The extent of this inclination is not averred, nor is it even stated that it rendered its proper and intended use dangerous. The strongest expression contained in the complaint, implying a disregard of the defendant's duty in respect to its platform, is, that it was " out of repair," and " wholly unsuitable for the reception of passengers." The only particular in which it was out of repair and unsuitable, as appears from the complaint, was its inclination from the cars toward the center.

Without more, we are unable to say, as matter of law, that this constituted negligence. Especially is this so, when we are asked to infer negligence in favor of the plaintiff, who shows in his complaint that he left the train while it was in motion, and, as we must presume, without the knowledge, consent or direction of the defendant's employees. To authorize a recovery for an injury so received, in any case, the negligence of the carrier ought not to be left to inference upon an equivocal statement of facts.

While it is the duty of a railroad company to keep its platform and approaches safe and convenient for the ingress and egress of passengers to and from its cars, the rigor of the rule which requires it, out of considerations of public policy, to exercise the highest possible diligence for the benefit of the passenger while in the actual progress of his journey, and

holds it responsible for the slightest defect in its machinery, track and appliances, is measurably relaxed with respect to its platform and approaches. With respect of these, it is to be held to that reasonable degree of care for the safety and protection of its patrons, having regard to the nature of its business, as is demanded of individuals upon whose premises others come by invitation or inducement for the transaction of business. *Cincinnati, etc., R. R. Co.* v. *Peters,* 80 Ind. 168; *Pendleton Street R. R. Co.* v. *Shires,* 18 Ohio St. 255; Thomp. Carriers, pp. 104, 209, 214.

That the platform at a station of undisclosed consequence was suffered to get out of exact level to such an extent only as that nothing more can be said of it than that it was out of repair, and unsuitable; without being dangerous, will not. authorize a legal presumption of negligence. So long as the approaches and platforms at stations are safe, and do not expose persons having occasion to use them to the chance of danger or inconvenience which may occasion hurt to them, it can not be said that the railroad company is negligent. Whether the platform was " suitable " or not was a matter of opinion upon which the defendant had a right to its judgment. The law can not be invoked until its safety becomes. a question.

Since it results from the conclusions already stated that the judgment of the court below must be reversed, and as the complaint is not questioned in that regard, we need not determine whether, upon the facts stated therein, the plaintiff was guilty of contributory fault.

For the appellee it is contended that as a right result was reached on the whole case, a reversal should not follow, even if the ruling of the court on the demurrer to the complaint was erroneous.

Where a demurrer to a complaint is overruled, the complaint must stand or fall upon its own merits. We can not look into the evidence and from that determine whether

to reverse or affirm the ruling on the demurrer. *Pennsylvania Co.* v. *Poor*, 103 Ind. 553.

In a case where there are two or more paragraphs in a complaint, if it affirmatively appears from special-findings in the case that the verdict was returned upon a good paragraph alone, a judgment will not be reversed because there may have been a bad paragraph also. *Martin* v. *Cauble*, 72 Ind. 67.

The plaintiff having testified that the nurses who attended him while prostrated from the injury, did so voluntarily and without charge, was nevertheless permitted, over objection, to prove by his attending physician what their services were worth. This evidence was admissible under the rulings in *City of Indianapolis* v. *Gaston*, 58 Ind. 224, and *Ohio, etc., R. W. Co.* v. *Dickerson*, 59 Ind. 317.

These services were necessary to ameliorate the condition and suffering of the plaintiff. That they were voluntarily and gratuitously rendered was for his benefit, and not for the benefit of the defendant. *Klein* v. *Thompson*, 19 Ohio St. 569; *The Ferryboat D. S. Gregory*, 2 Ben. 226; *Cunningham* v. *E. & T. H. R. R. Co.*, 102 Ind. 478.

The injury to the plaintiff occurred on the 6th of December, 1882. The court admitted the evidence of Calvin T. Nation, over the defendant's objection, in which he described the condition of the platform on which the injury occurred, as it was in March following. The witness testified that at that time there was a plank "cupped up" from one-half to five-eighths of an inch at the place where the plaintiff fell. Without evidence that the platform was in substantially the same condition at the time of the injury as at the time to which the testimony related, it was not proper to admit it. *City of Indianapolis* v. *Scott*, 72 Ind. 196. Nothing of that kind appears in the testimony of Mr. Nation, but the fact may have been shown by other witnesses. It is not important in the present aspect of the case that we examine the evidence to determine this point.

A number of objections are taken to instructions given by

the court. Some of the instructions are justly subject to the criticism of being too general in their character. As a rule, we think it may be said that instructions which deal with the particular case on trial, by an application of the law to the facts as they may be found in that case, rather than with the statement of general abstract questions of law on the subjects involved, are productive of better results. It is certain that there is less liability to error, and it is equally certain that it results in a better comprehension of the case by the jury.

That part of the fifth instruction in which it is said, that if, under all the circumstances, the act of leaving the train while in motion was one which an ordinarily prudent man in the exercise of reasonable care might reasonably be expected to do, the law would not regard it as negligent, even though it materially contributed to the injury complained of, was, to say the least, liable to mislead the jury. The formula used is that frequently adopted in attempting to define negligence. Like any other definition or abstract statement, it tends more to confuse than to instruct a jury as to what in any given case may constitute negligence. Whether the plaintiff was negligent or not depended upon the particular facts admitted or satisfactorily proved in the case. If the facts thus established constituted negligence, then whether they exhibited such conduct as an ordinarily prudent man might reasonably be expected to indulge in or not, it was none the less negligence. The most prudent men are not always exempt from carelessness, and when actually negligent, the law attaches the same consequences to their negligent conduct as to similar conduct in others. In estimating the value or relation of particular facts, it may well be that the jury may consider the conduct of men of ordinary prudence under similar circumstances, but it will not do to say, without regard to what the facts may be, that if the conduct involved is such as a prudent man would, or would not, have indulged under the circumstances, then the law pronounces one way or the

other on such conduct. It is upon the facts established in each case that, in the end, the law must declare whether negligence was, or was not, imputable. *Pittsburgh, etc., R. W. Co. v. Spencer*, 98 Ind. 186.

Upon a careful examination of the instructions complained of, we are not prepared to say that any of them, except as already indicated, state the law incorrectly.

While the sixth instruction, relating to the weight to be given to the corroborated evidence of an impeached witness, may be a correct statement of the law in the abstract, it was nevertheless a question for the jury to determine whether the effect of the corroboration should outweigh the impeachment. *Morris* v. *State, ex rel.*, 101 Ind. 560, and cases cited.

Whether the motion for a new trial should have been granted upon the ground of newly discovered evidence, as prayed for, we do not determine, and whether upon the evidence, as set out in the record, the verdict was sustained, since the conclusions reached may result in another trial, it is manifestly better that we express no opinion.

The judgment is reversed, with costs, with instructions to the court below to sustain the demurrer to the complaint, with leave to the plaintiff to amend, and for further proceedings.

Filed Dec. 16, 1885.