Lotz, J.
The only error assigned in this case is the overruling of the demurrer to the complaint.
The complaint is as follows:
“Said plaintiff complains of said defendant and says, that on, before and ever since the 8th day of July, 1891, said defendant was, and now is, a railroad corporation, operating a railroad from the city of New Albany, Floyd county, State of Indiana, through said county and State to St. Louis, in the State of Missouri; that on said day this plaintiff was in the service of said defendant as *590 brakeman, on one of its freight trains, which was being pulled from Huntingburg, in Dubois' county, in said State of Indiana, over defendant’s said railroad to said city of New Albany; that said train consisted of a locomotive and sixteen cars and one caboose; that two box cars were next to said locomotive, nine coal cars next to said box cars, and four box cars between said caboose and said coal cars, the said caboose being in the rear of said train; that all of said cars were loaded, the said coal cars being loaded with -coal; that said train was manned with an engineer and fireman, who were on said locomotive, a conductor, who was on said caboose, and two brakemen, one of whom was the plaintiff; that five miles west of said city of New Albany said defendant’s said railroad commences to descend a heavy grade down the knobs toward said city for the distance of at least three miles; that at the beginning of said grade, near the top of said knob, said railroad passes through a tunnel nearly one mile long; that when said train reached said down grade on said knob, and just before it entered said tunnel, it became and was necessary and the duty of said plaintiff and his fellow-brakeman to set the brakes of said train of cars, and to remain on the top of said cars during the passage of said tunnel and the descent of said grade; that plaintiff and his fellow-brakeman set all the brakes on said cars that could be set, but that by reason of several of said cars being equipped with brakes which were defective and out of repair, some of them not having a lever and some of them not having chains, the brakes thereon could not be set, and by reason thereof the said train attained a rapid and dangerous speed, and ran down said knob or hill at the rate of fifty miles per hour or more; that when said train reached a point on said down grade at or near Hoffman’s switch it became and was plaintiff’s duty to *591 pass towards the front end of said train, and to do so he had to pass over said coal ears; that said coal cars were loaded with coal piled up from twelve to eighteen inches above the end and sides of said cars, the said coal having no support to keep it in its place on said cars; that in the performance of his duty as such brakeman plaintiff was compelled to climb or jump from one coal car to another and pass over the top of said coal with which they were loaded, as aforesaid, and that in attempting to get from one of said cars to another, using due care, the coal gave way under him and threw him off said car to the ground, thereby bruising and wounding his head, eyes and body, from the effects of which he became and has remained sick and has lost the use of one of his eyes, is subject to nervous prostration, and has been permanently disabled to his damage fifteen thousand dollars. Plaintiff says that his said injuries were not occasioned by any fault upon his part, but were directly caused by the fault and negligence of the defendant; that defendant’s negligence consisted, as aforesaid, in not providing and equipping its said cars with efficient brakes and in improperly loading its said cars with said coal, none of which acts of negligence upon the part of the defendant did plaintiff know in time to avoid said accident and injuries.”
The concluding part of the complaint in general terms characterizes two acts as being negligent—the failure to supply proper brake appliances, and the improper manner in which the coal was loaded. Negligence may be pleaded in general terms. This was the.rule at common law, as well as under the code. The allegations must not be so general as to culminate in vagueness or be so uncertain as to admit, of almost any kind of proof. If enough be averred to show the existence of a legal duty and its breach, a very slight designation that the act *592 done, or omitted to be done, was committed or omitted in the absence of due care, is sufficient to support a charge of negligence. The general allegation of negligence has a technical significance. Lake Shore, etc., R. W. Co. v. Kurtz, 10 Ind. App. 60.
In Brinkman v. Bender, 92 Ind. 234, the concluding part of the complaint charged that a fire was caused wholly by the default and negligence of the defendant. Such averment was held to be broad enough to impute negligence to everything that the defendant did or suffered to be done. It is here averred that the plaintiff’s “injuries were not occasioned by any fault upon his part but were directly caused by the fault and negligence of the defendant.”
In a complaint founded upon the failure to perform a legal duty, the act done or omitted to be done should be characterized as having been negligently done, or negligently omitted to be done. Any other method of pleading negligence is extremely hazardous. Negligence or its equivalent must be directly averred, or such facts must be stated as that a presumption of negligence necessarily arises. Pennsylvania Co. v. Marion, 104 Ind. 239.
It is not directly charged that the defendant negligently failed to equip the cars with proper brake appliances, or that it negligently failed to load the coal properly and in a safe manner. The concluding averments are more in the nature of recitals than of direct averments. But as it was the defendant’s duty to the plaintiff to furnish him with reasonably safe tools, machinery appliances, and place in which to work, and as this duty was a continuing one, and as it does appear that there was a breach of duty on the part of the defendant, we think when the averments are all taken to *593 gether that it appears that the acts were negligently done and omitted to be done.
Appellant’s learned counsel insists that the averments do not show any connection between the defective brake appliances and the injury; that it does not appear that the train was proceeding at a dangerous rate of speed at the time the injury occurred; that for aught that appears, the plaintiff might have fallen from the car and sustained injury, even if the car had been moving at a moderate rate or was standing still; that there is nothing to show that the speed of the train had any effect upon the car, caused it to sway back and forth; or that it had any effect upon the plaintiff, causing him to lose his foothold.
The averments are somewhat indefinite, but this much is made to appear, that the plaintiff was employed as a brakeman on defendant’s loaded freight train; that said train was not properly supplied with brake appliances; that such train was descending a heavy or rapidly declining grade; that plaintiff and his fellow-brakeman did their duty, and set all the brakes that could be set.
Appellant further insists that there is no legal connection between the injury and the defective brakes, and that as to the improper loading of the coal, it was a risk which was open and apparent, and was assumed by the plaintiff, and that it does not appear that the defendant had any notice that the coal was improperly loaded.
Upon the hypothesis that there is but a remote connection between the injury and the brake appliances, we will consider the sufficiency of the complaint.
Where there are several causes which are either dependent or independent of each other, all of which contribute to the injury, an action may, in a proper case, be based upon all or any one of the causes. In this view of the complaint, it only remotely appears that the speed *594 of the train had anything to do with the coal giving away, or with the fall of the plaintiff from the car. It is not directly averred that the speed of the train had any unusual effect either upon the car, the coal, or the plaintiff. In this view, the complaint can be sustained, if at all, only upon the allegation concerning the improper manner in which the coal wa's loaded.
It is averred that the defendant owned and operated the railroad, and that one of its freight trains on which the plaintiff was at work was being run from Hunting-burg to the city of New Albany, and that one of the acts of negligence consisted “in improperly loading its said cars with said coal.”
Taking all the averments together, the necessary inference is that the manner in which the cars were loaded was either the act of the defendant or was made its act by accepting it in the condition in which it was loaded. It does not appear that the plaintiff either loaded or assisted in loading the cars. The general allegation of negligence on the part of the defendant, and of freedom from fault on the part of the plaintiff, rebuts any inference that the plaintiff loaded or assisted in loading.
The coal itself is not described, but the manner in which it was loaded is set out. It is averred that “said coal cars were loaded with coal piled up from twelve to eighteen inches above the end and sides of said cars, the said coal having no support to keep it in its place on said cars.” This loading is alleged to have been improper and negligent. It is not directly averred that the cars were loaded in an unusual or unsafe manner, nor that it was not customary to load cars with coal extending from twelve to eighteen inches above the ends and sides of the car, nor whether this manner of loading was exceptional. Nor does it appear at what distance from the ends and sides the coal reached a height of from *595 twelve to eighteen inches, nor whether it was either necessary or customary to furnish any kind of support to keep coal in its place above the sides and ends of coal cars.
Appellant insists that it can not be ruled as a matter of law that a car upon which the coal is thrown up in the middle to the height of twelve or eighteen inches above the sides and ends is improperly loaded.
If there were no other averments in the complaint, this contention would prevail; but it is further alleged that the loading was negligent as well as improper. That which is negligently done is improperly done. The pleader may negative the assumption of the risk on the part of the plaintiff, and aver knowledge of the defects on the part of the defendant in gene.ral terms. But should the pleader, after making the general allegation, also attempt to state the facts specifically, the specific allegations will control the general. In the complaint before us it is alleged that the plaintiff did not know of the defect in time to avoid the injury. If he had no knowledge, he could not assume the risk. Assumption implies knowledge. But many of the particular circumstances attending the injury are specifically stated. If, from the specific allegations, it appear that the plaintiff assumed the risk, then the general allegation is overthrown. Whilst the manner in which the coal was loaded was open and visible, the court can not say, as a matter of law, that danger was apparent. It may have been block coal, and from appearances may have been reasonably, safe. The general allegation, we think, is not overthrown. There is no direct averment that the defendant had notice that the coal was improperly loaded. If it appear from the averments, when taken as a whole, that defendant did have notice or could have had notice by exercising reasonable diligence, this will be sufficient. *596 The master’s duty to provide his servant with reasonably safe appliances, machinery, and places in which to work is a continuing one, and he is bound to take notice of the fact that tools, machinery, and appliances are liable to wear out and become defective with age and use.
Where the negligent act is an affirmative one and done by the master with his own hand, notice to the master is involved in the doing of the act. And this rule holds good where the negligent act is done by another under the order or direction of the master. But where the negligent act is one of omission (mere passive negligence) notice is not necessarily involved in the act itself. Under such circumstances, notice should be directly alleged, or such facts should be averred, from which notice follows as a necessary inference. Negligence arising from tortious conduct implies the violation of a duty knowingly done. When such an act is characterized as being negligent, knowledge or notice is involved, else the act would not be a negligent act. It is for this reason that a general allegation of negligence is usually sufficient, for it includes knowledge on the part of the defendant.
It was decided by the Supreme Court in Pittsburgh, etc., R. W. Co. v. Adams, 105 Ind. 151 (155), as we understand that case, that a general allegation of negligence was sufficient to charge the defendant with notice of defective appliances. See also Louisville, etc., R. R. Co. v. Utz, Admr., 133 Ind. 265. But in a more recent case in that court, Evansville, etc., R. R. Co. v. Duel, 134 Ind. 156, being an action by the servant against the master for an injury resulting from a failure to furnish reasonably safe machinery and appliances, it was held that a complaint which charged that the injury was caused * 'wholly through the fault and negligence of the defendant in carelessly and negligently using said unsafe and *597 defective engine” was insufficient to charge the master with notice of the defect. The rule as announced in the latter case, as we understand it, is that the complaint must aver directly that the master had notice of the defect, or such facts must be averred from which notice arises as a necessary inference, and that a general allegation of negligence is not sufficient in such cases. Conceding, as we must, that the general allegation of negligence does not cover notice of the defect on the part of the defendant, still it appears that the cars in question were either loaded by the defendant or accepted in the condition in which they were loaded.
Filed April 5, 1894.
The master was bound to see that the cars were in a reasonably safe condition when supplied to the plaintiff.
The complaint states a good cause of action based upon the improper manner in which the coal was loaded.
Judgment affirmed at the cost of appellant.
Gávin, J., and Davis, J., concur in the result.
Ross, J., absent.