JOHN COTTON, Appellee, v. CENTER COAL MINING CO., Appellant.

**Mines and mining:** EXCLUSION OF EVIDENCE: HARMLESS ERROR. The exclusion of testimony is harmless error where the same witness is subsequently permitted without objection to detail the facts. Thus the exclusion of the evidence of an experienced miner who was a timberman in the mine when an employee was injured, to the effect that on the day of his injury he sounded the roof of the mine from which slate fell causing the injury and found that it was then safe, while erroneous was not prejudicial, in view of the fact that like evidence was subsequently admitted without objection.

**Same:** NEGLIGENCE: ASSUMPTION OF RISK: INSTRUCTION. Negligence is to be determined, not as an abstract proposition, but concretely as applied to the facts of a given case, and the test is, what would a reasonably prudent person have done under like or similar circumstances. In this action plaintiff was injured by the fall of slate from the roof of the mine in which he was employed, and he claims that the master had previously promised to remedy the defect in the roof. The court instructed that if such promise was made and if the danger was not great and constant, and that if a reasonably prudent person would have remained in the service, continuing to pass under the roof, such promise would relieve plaintiff from the charge of assumption of risk. *Held,* that the instruction was not prejudicial because failing to state the test of negligence to be what a prudent person would have done *under the same or similar circumstances;* there being nothing in the charge negativing the rule and the rule being correctly stated in other instructions, one of which referred directly to plaintiff's contributory negligence.

**Same:** SAFE PLACE TO WORK: DUTY TO WARN: INSTRUCTIONS. Where the evidence was such as to show that the duty to inspect the roof at the time plaintiff complained of its condition was not mutual, but that the master had or should have had knowledge of facts which plaintiff did not possess and was not bound to discover, such as the fall of slate on the morning of the accident of which plaintiff disclaimed any knowledge, an instruction that the law imposed upon the master the duty to use reasonable care to provide safe passage ways in the mine for workmen, and that if he failed to warn plaintiff of the danger incident to the condition of the roof such failure would constitute negligence was proper.

**Same:** CONTRIBUTORY NEGLIGENCE: INSTRUCTION. Where it appeared, as in this case, that plaintiff did not know that the mine entry having the defective roof in question had been closed, that other employees were using it, that it was the master's duty to inspect and repair the roof, that the roof to some extent had been propped up where the slate fell, and as plaintiff was entitled to show continued use of the entry by other employees, on the theory that it was an invitation to him to use it and an implied representation that it was safe, which facts were proper to be considered as bearing upon plaintiff's negligence although he did not know what particular employees passed through the entry at any given time, requested instructions to the effect that other employees passed under the defective roof shortly prior to plaintiff's injury should not be considered as bearing upon the question of plaintiff's negligence in using the entry because it was not clear that plaintiff

knew that other employees had used the same, were properly refused. .

**Same.** As it was not plaintiff's unqualified duty to inspect the roof in question before passing under it, instructions that if plaintiff could have ascertained whether the portion which fell was safe by inspecting the same before passing under it, and that if it was not more dangerous to tap the roof for the purpose of inspection than to pass under it without doing so he was negligent in failing to make the examination, were properly refused.

**Same.** As it was shown that plaintiff had informed the pit boss of a previous fall of slate and that he promised to place supports under the roof, and there was evidence that the same was done to some extent at the place where the slate fell injuring plaintiff, instructions that if there had been a previous fall of slate at or near that point, of which plaintiff had knowledge, and if he knew the condition of the roof and upon inspection knew that the loose portion of the roof had not been taken down or supported, and the same fell causing his injury, he was negligent in going thereunder at the time of the accident without taking precautions for his safety, were also properly refused.

**Contributory Negligence:** EVIDENCE. It appears from the evidence in this case that plaintiff made complaint of the defective condition of the roof in the mine entry in question and that there had been a promise to remedy it, which was partially done, but that the entry was kept open without notice of danger; that the master claimed there had been a fall of slate from the roof on the day of the accident but plaintiff denied knowledge thereof. *Held,* that as the master was under a continuing duty to keep the roof safe, upon the performance of which duty the plaintiff had a right to rely, negligence of plaintiff in passing under the defective roof was not established as a matter of law.

*Appeal from Polk District Court.*—Hon. W. H. Mc-Henry, Judge.

Tuesday, November 23, 1909.

Rehearing Denied Saturday, May 14, 1910.

Action to recover damages for personal injuries received by plaintiff due to a fall of slate in a roof of defendant's mine. The case was tried to a jury, resulting

in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Clark & Hutchinson* and *A. A. McLaughlin,* for appellant.

*Thos. A. Cheshire* and *Edwin Proctor,* for appellee.

DEEMER, J.—Defendant is operating a coal mine in Polk County, Iowa, and plaintiff was a miner in its employ at the time of the happening of the accident complained of. Plaintiff was about forty-six years of age, and had been engaged in mining coal for many years, twenty-five of which were in mines in the vicinity of Des Moines. On the day in question plaintiff was working in what was known as room No. 2, off of what was called the eighth north entry, and, while passing from this room to his toolbox some distance down the entryway, he was injured by a fall of slate from the roof of the entry. The entryways were not timbered, save at places where it was deemed necessary, and this eighth entry was only partially timbered. Plaintiff claims:

That three or four days before the accident in which he was injured there was a fall of slate in the entry at about the place where he was injured, and at that time he sounded the roof at the place where he was hurt and found the same sounded hollow and drummy, showing that the roof was loose and likely to fall. That he then complained to Isaac Evans, the pit boss, that it was unsafe and should be timbered, and that Evans sounded the roof in his presence, and plaintiff observed that it sounded hollow and drummy. He also claims that Evans promised to timber it. It appears that after talking with Evans, and procuring his promise to timber the room, plaintiff paid no further attention to the roof of the entry at the place where it was loose. On the morning of the 21st of September, 1904, plaintiff went to work soon after seven o'clock. He had sent out one or two cars of coal,

and had drilled some holes, and was ready to put in the charge of powder, and started to take his boring machine to his toolbox down the entry, and passed out into the entry and beneath this loose and dangerous roof without looking at it, and without sounding it or taking any precaution to ascertain its condition, or to see whether he could safely go under it. When beneath the loose roof, it fell, and caused the injuries of which he complains.

Defendant contends that it had no knowledge that this roof was loose before the day of the accident, and denies that plaintiff or any one else ever complained to Isaac Evans, the pit boss, or any one else concerning same. It claims that the roof of the entry was inspected every morning. It further claims that there was a fall of slate at this place on the morning of the accident a short time before plaintiff was hurt, and that plaintiff was warned thereof. It also claims that the timbermen were at once notified to timber the roof at the place of the fall and make it safe, and that they arrived and commenced work within a few minutes thereafter, Isaac Evans having guarded the place from the time he was advised of the fall until the timbermen arrived; that the fall of slate on that morning covered the entire floor of the entry, and was from a foot to eighteen inches thick in the center, tapering off at the sides. It further claims that the timbermen had miners' lamps in their caps, and immediately commenced work preparing the place for timbers, and that, while they were so employed, plaintiff came from his room with his drill in his hands, passed the timbermen at work, asked no questions, did not stop to look at or examine the roof, but, notwithstanding warning called to him by both timbermen, climbed over the mass of slate and rock that had fallen from the roof, and just as he was almost clear of the fall, the rock from the roof fell upon him, and caused the injuries complained of.

Under this state of the record, defendant contends

that plaintiff was guilty of contributory negligence as a matter of law, and that he assumed the risk incident to the defective condition of the roof. Appellant also assigns many errors in the rulings of the trial court, claims that the verdict is without support in the testimony, and is contrary to the instructions given to the jury. Plaintiff charges that defendant was negligent in the following particulars:

(1) In not taking down this loose slate and in permitting it to be and remain in the roof of the entry.

(2) In not heeding the repeated warnings that the slate in the roof of the entry at this point was loose and dangerous.

(3) In not taking down this loose slate, and in failing to timber or prop the entry at the point where this loose slate was hanging in the roof, so that the same would not fall upon workmen passing through the entry.

(4) In not using ordinary care to furnish the plaintiff a reasonably safe place to go and come to and from his place of work.

(5) In not informing the plaintiff that there was loose slate in the roof of the entry at the point where he was injured, and in failing to warn him of the danger thereof.

In an amendment to the petition plaintiff alleged: "That the defendant was negligent in the following additional particulars to that stated in the original petition: That it did not timber the entry at the place where plaintiff was injured, as its pit boss and manager Isaac Evans, had agreed to do when requested by the plaintiff to timber said entry at said place three or four days before the date of the accident."

The issues which were submitted to the jury are disclosed by the following instruction:

And, as applied to this case, the allegations of negligence are that the defendant was negligent in not taking down the loose slate which hung from the roof of its

entry at the place where the plaintiff was hurt; in not timbering the roof of the said entry at the said place; in not removing the said slate, and timbering the said roof, after it was informed of the dangerous condition thereof, and had promised so to do; in not warning the plaintiff in this action of the dangerous condition thereof. And, with regard to these allegations, you are instructed that the law imposes upon the defendant in this action the duty to use reasonable caution and care for the purpose of providing safe entries through which its workmen may go and come to and from their work, and that if, with regard to any of the said allegations of negligence, there was a failure upon the part of the defendant to use reasonable and ordinary care in the respects herein complained of, such failure would constitute negligence.

In addition to its general verdict for plaintiff upon the negligence charged, the jury returned answers to the following special interrogatories:

.    Interrogatory 1. Was there a mass of slate lying on the floor of the entry complained of at and before the time of the accident complained of between the mouth of plaintiff's room and the place where he was injured?

Interrogatory 2. Did the plaintiff pass timbermen, Baker and Morris, engaged in timbering the entry complained of in going from the mouth of his room to the place where he was injured just before the accident?

The answer to each of these was "No."

I.    We shall first consider the only ruling upon the introduction of testimony which is complained of. Appellant produced as a witness an experienced miner who was a timberman at the time plaintiff was injured, and who, after testifying to the condition of the entryway, was asked the following questions, upon which rulings were made as indicated: "Q. State whether or not when you sounded this roof on the morning before the accident,

1. MINES AND MINING: exclusion of evidence: harmless error.

or what, in your judgment, was the condition of this roof that morning at the place where the accident happened? A. It was safe the morning before. (Plaintiff moves to strike out the answer as incompetent. Sustained. Plaintiff excepts.) Q. What I am asking is, what your judgment is. What in your judgment was the condition of the roof at this place the morning before the accident? A. The morning before the accident I pronounced it safe and sound. Q. You mean that is your judgment? A. Yes. (Plaintiff moves to strike out the answer as incompetent. Sustained. Defendant excepts.)" Doubtless these rulings were erroneous under the rule adopted by this court in *Taylor v. Coal Co.*, 110 Iowa, 40; *Betts v. Railroad Co.*, 92 Iowa, 343; *Hammer v. Janowitz*, 131 Iowa, 20, and other like cases; but the error was without prejudice for the reason that this same witness testified without objection that he sounded the roof in question on the morning of the day of the accident, found it solid and sound, and as firm as an anvil. He also testified that he tapped the roof on this morning every two or three feet, and that it was solid and sound as far as he knew. This cured any error in the ruling complained of.

II. Several of the instructions are challenged, among others the seventh, which contains the following statement: "If, therefore, notwithstanding such promise, the plaintiff could not remain in defendant's employment and continue to pass through the said entry without constant and immediate danger, the character of which was fully known to the plaintiff, he must then be held to have assumed such risk. But if such promise was made, and if the danger was not great and constant, and if a reasonably prudent person would have remained in such employment and continued to pass through the said entryway, then such promise may be deemed to have relieved the plaintiff from the charge of having assumed the

*2. SAME: negligence: assumption of risk: instruction.*

risk of such employment." The exact complaint is that the test is not what a reasonably prudent person would have done; but as to what such a person would have done *under the same or similar circumstances.* It is the omission of the italicized words of which defendant complains. Negligence, of course, is to be determined, not as an abstract proposition, but concretely and as applied to the facts of a given case, and the criterion is as to what a reasonably prudent person would have done under like or similar circumstances. *Galloway v. Railroad Co.,* 87 Iowa, 458. But there is nothing in the instruction which negatives this thought, and the matter is correctly expressed in other instructions given by the court, notably the fourth, which referred directly to plaintiff's contributory negligence. There was no conflict in these instructions, and the statement found in the seventh, although perhaps not as full as it should have been, was not in itself erroneous, and, as the matter was fully covered in other paragraphs of the charge, no prejudice resulted. This view is sustained by the following, among other, cases: *Hart v. Railroad Co.,* 109 Iowa, 631; *Little v. McGuire,* 43 Iowa, 447; *Rusch v. City,* 6 Iowa, 443; *Devine v. Railroad Co.,* 100 Iowa, 692. Other cases might be cited in support of this proposition, but these seem to be sufficient. The Supreme Court of Indiana appears to have taken a contrary view in *Railroad Co. v. Marion,* 104 Ind. 239 (3 N. E. 874); but our rule is opposed to the doctrine there announced, and we see no good reason for changing it.

Instruction 3, already quoted, is complained of because it submits to the jury the question of whether or not defendant was negligent in failing to warn plaintiff of the danger to be apprehended from the loose roof. It is argued that he knew as much about it as the defendant, and that defendant was under no duty to warn him of such danger.

3. SAME: safe place to work: duty to warn: instructions.

If appellant's premise were correct, his conclusion is undoubtedly good. *Magee v. Railroad Co.,* 82 Iowa, 249; *McCarthy v. Mulgrew,* 107 Iowa, 76, and other like cases. But there was evidence for plaintiff, showing that three or four days before his injury he had observed a fall of slate near the place where he was subsequently injured; that he called the attention of defendants' pit boss to the condition of the roof; that the pit boss sounded the roof, found it "sort of drummy," and promised to fix it; that thereafter one set of timbers was put in near the mouth and south of plaintiff's room; and it further appears that defendant had two expert timbermen whose duty it was to daily sound and inspect all roofs and to protect the same by timbering, which fact was known to plaintiff. There was also testimony to the effect that this entryway was not closed or barricaded, but that it was constantly used by other employees in the mine from the time of the first fall of slate, of which plaintiff had knowledge, down to the time of the accident, and that plaintiff had not tapped or inspected the roof from the time he complained to the pit boss down to the time he was injured. It thus appears that the duty of inspecting the roof was not mutual, and that defendant had, or should have had, knowledge of facts which plaintiff did not possess, and was not bound to discover, among other things, the fall of slate on the morning of the accident of which plaintiff said he did not know. The jury in a special interrogatory found that plaintiff did not have this knowledge. So much as to the instructions given.

III.   As to the instructions refused: In what has already been said, we have disposed of appellant's contention that the trial court should have given its ninth and tenth requests. In requests No. twenty-eight and twenty-nine the court was asked to instruct as follows:

4. SAME: contributory negligence: instructions.

No. 28. The fact that Isaac Evans or any other employee in defendant's mine went beneath the loose slate that fell upon plaintiff a short time before plaintiff was injured will not be considered by you as bearing upon the question of whether plaintiff was negligent in going beneath the same at the time of the accident. It is not claimed that plaintiff knew that said Evans or either of said other employees had gone beneath said loose roof at said time, and their having gone under the same at said time could not have influenced the plaintiff, nor could the same have affected his conduct in going beneath said loose roof at the time complained of.

No. 29. You are instructed that the fact that Isaac Evans and the timbermen, Baker and Morris, passed under the loose slate that fell upon the plaintiff, under the circumstances shown in the evidence, should not be considered by you in determining whether plaintiff was guilty of negligence in passing under the same as the time of the accident.

As applied to the facts of the case, there was no error in refusing these requests. It is true that it was not shown that plaintiff had knowledge that these particular persons had passed through the entry, but he did know that it had not been barricaded or closed to use; that employees generally were using it, as the testimony of the witnesses referred to in the instruction clearly showed; that it was defendant's duty to inspect the roof and keep it in repair; and that some timbers had been put in near the place where the roof fell. It was proper, then, for plaintiff to show the continued use of the entryway by the various persons who had passed through it, and for the jury to consider the fact that it was being so used, as bearing upon the question of plaintiff's negligence, although he did not know just who the men were who had passed through at any given time. If plaintiff were relying simply upon the fact that these two particular persons had passed through the entry as a justification for his attempt to do so, the instructions asked should have

been given. But such is not the situation. Plaintiff proved that these men and others went through, and that defendant had not barricaded or closed the passage, but had allowed it to be used upon the theory that this was an invitation to him to use it, and an implied representation under all the facts that it was safe for use. With this thought in mind, it is apparent that the instructions, if given, would have been erroneous. *Rumpel v. Railroad Co.*, 4 Idaho, 13 (35 Pac. 700, 22 L. R. A. 725), relied upon by appellant, is not in point, as an examination will show. There was no invitation to plaintiff to crawl under the cars or take the course he did. Here there was an entryway which plaintiff was invited to use, and which he had a right to use, unless he knew it was dangerous to do so. The fact that it was used generally by employees was a proper circumstance to be considered by the jury in view of the entire record showing promise of repair, duty of inspection, etc., although plaintiff did not know what particular men were using the entry.

Defendant also asked the following instructions:

No. 15. If you find from the evidence that plaintiff could have ascertained whether the portion of roof which fell upon him was safe by tapping the same with a pick just before going beneath it, and that it was not more dangerous for him to tap said roof with a pick than to attempt to pass beneath it as he did, then you are instructed that plaintiff, in failing to test said roof by tapping the same with a pick, was guilty of contributory negligence, and can not recover.

No. 30. If you find from the evidence that there had been a fall of slate a few days before plaintiff was injured at or near the place where he was injured, and that plaintiff knew thereof and sounded the roof of the entry at and around said place, and found the slate in the roof to be loose, and that the said roof, where sounded, sounded drummy, and further find that said loose or drummy portion of said roof had not been taken down or timbered before plaintiff's injury,

and that the same fell upon the plaintiff, then you are instructed that plaintiff in going under said loose or drummy slate or roof at the time of the accident, under the circumstances shown in the evidence, was guilty of negligence directly contributing to his injury, and your verdict should be, in the event you so find, for defendant.

No. 31. If you find from the evidence that there had been a fall of slate at or near the place where plaintiff was injured a few days before, and that plaintiff knew thereof, and sounded the roof around the place from which said slate had fallen, and found the same to be loose, and further find that said place had not been timbered before plaintiff was injured, and that plaintiff went beneath said loose slate or roof at the time of the accident without taking any precautions to ascertain whether he could do so with safety, then you are instructed that he was guilty of contributory negligence, and can not recover.

Instruction 15 was clearly erroneous, for under the facts disclosed it was not plaintiff's absolute duty to tap the roof of the entry before going under it. The same may be said of requests 30 and 31.

Plaintiff testified that, after the fall of slate some three or four days before his accident, he informed the pit boss and was promised that the roof would be fixed; and there was also testimony to the effect that thereafter some timbering was done by the defendant very near the place where the slate which injured plaintiff fell. In this situation it would have been error to have given the thirtieth and thirty-first instructions asked.

IV. The principal complaints made by appellant are, however, that the verdict is contrary to the instructions, contrary to law, without support in the testimony, and is the result of passion and prejudice. It is argued with great confidence that plaintiff was guilty of contributory negligence as a matter of law, and that he assumed the risk incident to the defects. These are the troublesome questions in the case. This whole matter depends, as we view it, upon

7. Contributory
   Negligence:
   evidence.

the determination of the one pivotal question: Was there a fall of slate on the morning of the day when plaintiff was injured at or near the place of his injury of which he had, or should have had, knowledge, and, if so was he justified under all the circumstances in passing under the roof near where this fall had taken place. We do not think that under the record before us he assumed the risk because of defendant's failure to comply with the promise of its pit boss. It appears that it did put in some timbers at or near the place in question, that it kept the entryway open, and that it did not barricade it, or give any notice of danger. In these circumstances plaintiff was justified in passing along the entry and under the roof complained of, unless he knew or should, in the exercise of ordinary care, have known, not only that there was some danger at the place in question, but also that it was imprudent to pass under the roof in question. Defendant was under a continuing duty with reference to the roof, and plaintiff had the right to rely upon the performance of that duty by the defendant. He said that he did not know of any fall of slate on the morning of the day he was injured, and the jury found with him on this proposition. That being true, there was neither assumption of risk nor contributory negligence on his part— that is to say, we can not hold as a matter of law either that plaintiff assumed the risk or that he was guilty of contributory negligence without invading the province of the jury. On this theory the verdict is not contrary to the instructions. The case is close upon these questions, but, as they were for a jury, it is not our province to interfere.

Finding no prejudicial error in the record, the judgment must be, and it is, *affirmed*.